**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| LAW SCHOOL ADMISSION COUNCIL, INC., <br><br>                Plaintiff, <br><br>     v. <br><br> MORLEY TATRO, <br> d/b/a DEFENDANT, <br><br>               Defendant. | Civil Action No. 15:5219-MAK |

**OPPOSITION OF PLAINTIFF LAW SCHOOL ADMISSION COUNCIL, INC. TO
DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

John V. Gorman (PA Bar No. 80631)
jgorman@morganlewis.com
Amy M. Dudash (PA Bar No. 311898)
adudash@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  215.963.5000
Fax:  215.963.5001

Anita B. Polott (*pro hac vice* application forthcoming)
apolott@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington, DC  20004-2541
Tel:  202.739.3000
Fax:  202.739.3001

## TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................. 1

II.  BACKGROUND ................................................................................... 2

  A.  The Parties' Licensing Relationship ........................................... 2

  B.  Defendant's Extensive Contacts with Pennsylvania.............................. 3

  C.  The California Action ................................................................. 3

  D.   Defendant's Motion To Dismiss This Action ...................................... 4

III.  ARGUMENT ...................................................................................... 5

  A.  LSAC Has Made Out a Prima Facie Case of Specific Personal Jurisdiction ........ 5

    1.  Defendant's Use of an Interactive Website to Sell LSAC Materials Obtained from Pennsylvania to People Located in Pennsylvania Demonstrates Purposeful Availment ..................................... 6

    2.  Defendant's Other Forum Contacts Further Demonstrate That the Exercise of Specific Jurisdiction Is Appropriate ..................................... 8

    3.  This Lawsuit Arises Out of Defendant's Forum-Related Contacts ........... 9

    4.  Defendant's Willful Copyright Infringement in Pennsylvania Subjects Him to Specific Jurisdiction ..................................... 9

    5.  The Exercise of Specific Jurisdiction Comports with Due Process ........ 11

  B.  This Action Is In the Proper Venue, and Should Not Be Transferred ................ 12

    1.  The *Jumara* Private Interest Factors Weigh Against Transfer ............... 13

      a.  LSAC's Choice of Forum Is Entitled to Paramount Deference ..................................... 13

      b.  Defendant's Forum Preference Is Entitled to Little Weight ........ 14

      c.  The Claim Arose in Pennsylvania, Thus Demonstrating That Pennsylvania Is the Appropriate Forum to Adjudicate It ..................................... 14

      d.  The Convenience of the Parties Is Neutral ................................. 14

      e.  Convenience of Witnesses Weighs Against Transfer.................. 14

      f.  The Location of Books and Records Is Neutral.......................... 15

    2.  The *Jumara* Public Interest Factors Weigh Against Transfer ................ 15

      a.  Enforceability of the Judgment Is a Neutral Factor .................... 15

      b.  Practical Considerations That Would Make Trial Easier Weigh Against Transfer............................................................. 15

       c.     Court Congestion Weighs Against Transfer ................................ 16

       d.     Local Interest in the Controversy and Public Policy Weigh Against Transfer ........................................................................ 16

C.    The Existence of the California Action Does Not Warrant Dismissal of the Instant Action ................................................................................................... 17

IV.   CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acrison, Inc. v. Control & Metering Ltd.*,
    730 F. Supp. 1445 (N.D. Ill. 1990) ........................................................................10

*Adv. Specialty Inst. v. Vermotion, Inc.*,
    No. Civ. A. 02-CV-7219, 2003 WL 21982137 (E.D. Pa. June 10, 2003) ................................6

*Mellon Bank (E.) PSFS, Nat.'l Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992).................................................................................5

*Carteret Sav. Bank v. Shushan*,
    954 F.2d 141 (3d Cir. 1992)..............................................................................5, 10

*Drugstore-Direct, Inc. v. The Cartier Div. of Richemont N.A., Inc.*,
    350 F. Supp. 2d 620 (E.D. Pa. 2004) ...................................................................17

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988).................................................................................17

*EVCO Tech. & Dec. Co. v. Precision Shooting Equip., Inc.*,
    379 F. Supp. 2d 728 (E.D. Pa. 2005) ...................................................................14

*FMC Corp. v. AMVAC Chem. Corp.*,
    379 F. Supp. 2d 733 (E.D. Pa. 2005) ...................................................................17

*Gentex Corp. v. Abbott*,
    978 F. Supp. 2d 391 (M.D. Pa. 2013) ...............................................................8, 12

*Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*,
    Civ. A. No. 08-2158, 2008 WL 4755350 (D.N.J. Oct. 29, 2008)..............................8

*Grand Entm't Group, Ltd., v. Star Media Sales, Inc.*,
    988 F.2d 476 (3d Cir. 1993).................................................................................11

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998).................................................................................10

*IMS Health, Inc. v. Vality Tech. Inc.*,
    59 F. Supp. 2d 454 (E.D. Pa. 1999) .....................................................................17

*Ingram v. Page*,
    No. 98 C 8337, 1999 WL 569565 (N.D. Ill. July 28, 1999) ..............................10, 14

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012)......................................................................14

*Jermax, Inc. v. AK Steel Corp.*,
   Civ. A. No. 09-cv-4438, 2010 WL 2652276 (D.N.J. June 24, 2010) .....................................19

*Jumara v. State Farm*,
   55 F.3d 873 (3d Cir. 1995) ...............................................................................................1, 12, 13

*Kiker v. Smithkline Beecham Corp.*,
   Civ. A. No. 14-1445, 2014 WL 4948624 (E.D. Pa. Oct. 1, 2014) .........................................15

*Lepage's, Inc. v. 3M*,
   No. Civ. A. 97-3983, 1997 WL 587355 (E.D. Pa. Sept. 10, 1997) .......................................13

*McGovern v. GEICO*,
   Civ. A. No. 15-2313, 2015 WL 2330080 (E.D. Pa. May 14, 2015) ......................................13

*Miller Yacht Sales, Inc. v. Smith*,
   384 F.3d 93 (3d Cir. 2004) ..................................................................................................5, 6

*Morley Cambridge Tatro v. Law Sch. Admission Council, Inc., et al.*,
   Case No. 2:15-cv-07627-RGK-JEM (C.D. Cal.) ........................................................... *passim*

*Morrison v. Lindsey Lawn & Garden, Inc.*,
   Civ. A. No. 13-1467, 2014 WL 831570 (E.D. Pa. Mar. 4, 2014) .........................................15

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007) ..........................................................................................6, 11, 12

*Pa. Mach. Works, Inc. v. N. Coast Remanfg. Corp.*,
   No. Civ. A. 04-1731, 2004 WL 2600117 (E.D. Pa. Nov. 16, 2004) ......................................15

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   640 F.3d 497 (2d Cir. 2011) .................................................................................................10

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,
   149 F.3d 197 (3d Cir. 1998) .................................................................................................11

*PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   Civ. A. No. 09-00896, 2009 WL 2326750 (E.D. Pa. July 28, 2009) ......................................18

*PPL Energy Servs. Holdings, Inc. v. Zoot Props., LLC*,
   C. A. No. 05-6610, 2006 WL 2524228 (E.D. Pa. Aug. 30, 2006) .........................................17

*RCQ Ltd. v. JKM Enters., Inc.*,
   Civ. A. No. 1:13-cv-307, 2014 WL 4792148 (W.D. Pa. 2014) ...........................................6, 9

*Select Med. Corp. v. Hardaway*,
   No. Civ. A. 05-3341, 2006 WL 859741 (E.D. Pa. Mar. 24, 2006) ...................................12, 14

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)...............................................................................12, 13

*Simoniz USA, Inc. v. Motor City Wash Works, Inc.*,
    Civ. A. No. 3:07-cv-392, 2007 WL 3355400 (D. Conn. Nov. 9, 2007) ...................................7

*Skidmore v. Led Zeppelin*,
    Civ. A. No. 14-3089, 2015 WL 2116632 (E.D. Pa. May 6, 2015) ...........................................8

*Smith v. Hireright Sol., Inc.*,
    Civ. A. No. 09-6007, 2010 WL 2270541 (E.D. Pa. June 7, 2010) .........................................16

*Square D. Co. v. Scott Elec. Co.*,
    Civ. A. No. 06-00459, 2008 WL 4462298 (W.D. Pa. Sept. 30, 2008) ...........................7, 8, 9

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003).....................................................................................................6

*TRE Servs., Inc. v. U .S. Bellows, Inc.*,
    No. 2:12-cv-00663, 2012 WL 2872830 (W.D. Pa. July 12, 2012) ...........................................8

*VaVi, Inc. v. Newton*,
    No. 13CV01128, 2013 WL 4499125 (S.D. Cal. Aug. 19, 2013)............................................10

*Wellness Publ'g, Inc. v. Barefoot*,
    128 Fed. App'x. 266 (3d Cir. 2005)........................................................................................10

*Willyoung v. Co. Custom Hardware*,
    C.A. No. 1:08–cv–17-SJM, 2009 WL 3183061 (W.D. Pa. Sept. 30, 2009).............................8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997).................................................................8, 7, 12, 16

**STATUTES**

28 U.S.C. § 1404...........................................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b) ......................................................................................................................4

## I.  <u>INTRODUCTION</u>

In his late-filed Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket Index ("D.I.") 9) ("Mot." or "Motion"), defendant Morley Tatro d/b/a Defendant ("Defendant" or "Mr. Tatro") claims that this Court cannot exercise jurisdiction over this copyright infringement action because Defendant is a California resident with purportedly few Pennsylvania contacts for whom litigating in Pennsylvania would impose an undue burden. However, Defendant's Motion is not supported by facts or law.

First, this Court has personal jurisdiction over Defendant because he has extensive contacts with the Pennsylvania that directly relate to the instant action.  Specifically, Defendant: (1) controls an interactive website through which people located in Pennsylvania can and have purchased Law School Admissions Tests ("LSATs"), ancillary materials, or materials incorporating these tests (collectively, "LSAT Materials") that infringe plaintiff Law School Admission Council, Inc. ("LSAC")'s copyrights, (2) transmitted LSAT Materials to people located in Pennsylvania, (3) reached into the Commonwealth to obtain LSAC's copyrighted LSAT Materials, (4) engaged in numerous communications with people located in Pennsylvania regarding LSAT Materials, and (5) harmed LSAC – a Pennsylvania resident.

Second, venue is proper in the Eastern District of Pennsylvania.  Defendant has not even attempted to demonstrate that the public and private interest factors set forth in *Jumara v. State Farm*, 55 F.3d 873 (3d Cir. 1995) weigh strongly in favor of transfer such that LSAC's choice of forum should be disturbed.  Nor could Defendant make such a showing, as the balancing of these factors weighs against transfer.

Third, there is no basis for this Court to dismiss the action in favor of an action brought by Mr. Tatro against LSAC in the Central District of California, *Morley Cambridge Tatro v. Law Sch. Admission Council, Inc., et al.*, Case No. 2:15-cv-07627-RGK-JEM (C.D. Cal.) ("California

Action").  The California Action is the type of action that courts have found *not* to be entitled to deference as a first-filed action:  *i.e.*, a tactically-filed declaratory judgment action meant to disrupt settlement discussions and to win the race to the courthouse before LSAC could file an infringement action.  Moreover, even if the current operative complaint in the California Action survives dispositive motion practice, resolution of the California Action would not dispose of substantially all of the instant case – a prerequisite to application of the first-filed doctrine.

## II.   BACKGROUND

### A.   The Parties' Licensing Relationship.

LSAC is a non-profit organization with a principal place of business in Newtown, PA. *See* D.I. 1 ¶ 1.  In 2009, Defendant reached out to LSAC to request a license to use, reproduce, and sell LSAT's copyrighted LSAT Materials.  *See* Declaration of John V. Gorman ("Gorman Decl.") ¶ 4.  That same year, the parties reached an agreement that permitted Defendant to use, print, reproduce, and distribute certain LSAT Materials under certain circumstances.  *See* D.I. 1 ¶ 11.  Defendant proceeded to market, offer for sale, and sell LSAT Materials to Pennsylvania residents through his website, cambridgelsat.com (the "Cambridge LSAT Website").  Gorman Decl. ¶¶ 8-12.  Defendant also sent payments under his agreements to LSAC in Pennsylvania. *See id.* ¶ 6.

The parties entered into their most recent (and final) license agreement on June 15, 2015 ("Licensing Agreement"), covering the period of January 2015 through June 30, 2017.  *See* D.I. 1 ¶ 11.  That license agreement expressly gave LSAC the right to "terminate [the] license at its sole discretion at any time for any reason." Gorman Decl. Ex. 12 at Ex. D ¶ 2.  On August 4, 2015, because Defendant refused to discontinue his improper and unlicensed use of LSAC's LSAT Materials LSAC terminated the Licensing Agreement and informed Defendant that as of August 15, 2015 he was no longer licensed to offer for sale or sell LSAT Materials.  D.I. 1 ¶ 12.

Despite the clear and proper termination of the Licensing Agreement by LSAC, Defendant continues to distribute LSAC's copyrighted material on the Cambridge LSAT Website.  *See* Gorman Decl., Ex. 6 (screenshots of Cambridge LSAT Website as of December 11, 2015); *id.* ¶¶ 26-29 (discussing purchase through Cambridge LSAT Website on by Pennsylvania resident two days ago); Declaration of Felicia Williams ("Williams Decl.") ¶¶ 9, 11-13 (discussing Pennsylvania purchase through Cambridge LSAT Website on August 27, 2015).

### B.    Defendant's Extensive Contacts with Pennsylvania.

Defendant has extensive contacts with Pennsylvania relating to the instant action, which is a copyright infringement case premised on, *inter alia*, Defendant's unlawful distribution of LSAT Materials beyond the scope of any license Defendant once had.  Specifically:

- Defendant controls the interactive Cambridge LSAT Website, which displays and makes available for purchase LSAC's copyrighted LSAT Materials to, *inter alia*, people located in Pennsylvania.  Gorman Decl. ¶¶ 8, 10-11.

- Through the Cambridge LSAT Website, numerous people located in Pennsylvania have purchased LSAT Materials – including after the termination of the parties' Licensing Agreement.  *See id.* ¶¶ 13-14, 19, 26; Williams Decl. ¶ 9.

- Defendant has received revenue from sales of LSAT Materials from people with Pennsylvania billing or shipping addresses.  *See* Gorman Decl. ¶¶ 15-16.

- Defendant has had repeated communications with people in Pennsylvania regarding LSAT Materials.  *See* Gorman Decl. ¶¶ 4, 17, 21; Williams Decl. ¶¶ 4-5, *id.*, Ex. 1.

- Defendant controls the marketing of LSAT Materials and has not limited his marketing or advertising efforts to be solely related to locations outside Pennsylvania.  Gorman Decl. ¶¶ 7, 9.  Defendant also has advertised on his website LSAT tutoring services that were available in Philadelphia, Pennsylvania – thereby belying any claim that there was no direct advertising aimed at Pennsylvania residents.  *See id.* ¶¶ 18, 24.

### C.    The California Action.

After LSAC's termination of the Licensing Agreement, the parties entered into negotiations to attempt to resolve their dispute regarding, *inter alia*, Defendant's impermissible

use of LSAT Materials.  *See* Gorman Decl., Ex. 12 ¶ 7.  On September 2, 2015, while in the midst of these negotiations, Mr. Tatro filed a preemptory lawsuit against LSAC in California asserting various claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment.  He admitted that the basis for the lawsuit was that LSAC had informed him that, if the parties could not resolve their dispute, LSAC would file suit for copyright infringement in Pennsylvania.  *See* Gorman Decl., Ex. 12 ¶¶ 1, 10, 19.

On November 19, 2015, the Original Complaint in the California Action was dismissed in its entirety for failure to state plausible claims.  *See* Gorman Decl., Ex. 13.  The California Court allowed Mr. Tatro an opportunity to file an amended complaint containing only a claim regarding the Licensing Agreement's cure provision, but in doing so the Court emphasized that permitting the filing of an amended claim was not a guarantee of its viability.  *See id.* at 7.  On November 30, 2015, Mr. Tatro filed an Amended Complaint containing a single claim for declaratory judgment seeking a declaration that LSAC failed to provide Mr. Tatro with 30 days notice prior to terminating the Licensing Agreement.  *See id.*  The deadline for LSAC to move to dismiss or otherwise respond to the Amended Complaint is December 17, 2015.

### D.        Defendant's Motion To Dismiss This Action.

LSAC served its Complaint on Defendant on September 22, 2015, making October 13, 2015 the deadline for Defendant to respond to the Complaint.  *See* D.I. 5.  On October 12, 2015, Defendant contacted LSAC's counsel and informed LSAC's counsel that he would "like to request a 2-week extension to respond to the complaint."  Gorman Decl., Ex. 16.  In response, LSAC's counsel informed Defendant that LSAC did not oppose an extension.  *Id.*  However, Defendant did not seek an extension from the Court, nor did he respond to the Complaint within two weeks after it was originally due (*i.e.*, by October 27).  Instead, on October 29, Defendant submitted an untimely motion pursuant to Rules 12(b)(2) and (3) to dismiss this action for lack

of personal jurisdiction and for improper venue.  Defendant did not move for transfer under 28 U.S.C. § 1404, nor did he raise the existence of the California Action as a basis for transfer or dismissal.  The Court subsequently ordered LSAC's briefing in response to the Motion to address "this Court's venue analysis and the status of the [California Action], including whether this Court should dismiss in favor of the prior pending action."  *See* D.I. 13 ¶ 2(d).[1]

## III.   ARGUMENT

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the movants.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  However, when a court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Id.*  "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  *Mellon Bank (E.) PSFS, Nat.'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation marks and citations omitted).  "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).[2]

---

[1] The Court also ordered LSAC to issue expedited jurisdictional and venue discovery, and Defendant to "fully respond" to such discovery by November 23, 2015.  After Defendant failed to respond to the jurisdictional discovery, the Court allowed Defendant to respond to LSAC's discovery by December 2.  Notwithstanding the Court's Order, and despite repeated requests from LSAC's counsel, Defendant has not complied with his discovery obligations with respect to, *inter alia*, jurisdictional discovery.  For example, Defendant has answered interrogatories solely by referring to unspecified documents.  Further, Defendant has produced spreadsheets showing customer address information for the years 2009-2012, but spreadsheets for later years have omitted that information.  LSAC expressly preserves its rights to bring this and other jurisdictional discovery deficiencies to the Court for relief to the extent they become material to the Court's analysis.

[2] The Pennsylvania long-arm statute, 42 Pa. C.S. § 5322, allows personal jurisdiction to the maximum limits of the Constitution.  *See Mellon Bank*, 960 F.2d at 1221.  Thus, in evaluating whether it has jurisdiction over Defendant, the Court need only determine whether the exercise of jurisdiction violates due process.  So long as Defendant has

### A.      LSAC Has Made Out a Prima Facie Case of Specific Personal Jurisdiction.

Determining whether specific jurisdiction exists begins with an examination of the relationship among the defendants, the forum, and the litigation.  *Miller*, 384 F.3d at 96. Specifically, courts undertake a three-part inquiry:  (1) did the Defendant purposefully direct his activities at residents of the forum state; (2) does the litigation arise out of those activities; and (3) does the exercise of jurisdiction otherwise comport with principles of "fair play and substantial justice."  *RCQ Ltd. v. JKM Enters., Inc.*, Civ. A. No. 1:13-cv-307, 2014 WL 4792148, at *3 (W.D. Pa. 2014).  Here, each of these prongs is satisfied.

### 1.      Defendant's Use of an Interactive Website to Sell LSAC Materials Obtained from Pennsylvania to People Located in Pennsylvania Demonstrates Purposeful Availment.

It is undisputed that (1) Defendant owns and controls the Cambridge LSAT Website; (2) the Cambridge LSAT Website makes LSAT Materials available to Pennsylvania residents; (3) Pennsylvania residents have purchased LSAT Materials through the Cambridge LSAT Website, which Defendant controls; (4) Defendant has derived revenue from his sales of LSAT Materials in Pennsylvania via his website; and (5) Defendant obtained the infringing materials he now sells on his website by soliciting and obtaining them from LSAC in Pennsylvania.  *See* § II.B. *supra*. Courts may properly exercise specific jurisdiction over a defendant for a lawsuit arising out of contacts like these, such as in the instant case in which LSAC alleges that Defendant's sales constitute willful copyright infringement.[3]   After all, "[i]f a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum

---

"certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," the Court properly exercises personal jurisdiction.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

[3] Defendant's lack of physical presence in the forum is of no import to the Court's specific jurisdiction analysis.  *See Adv. Specialty Inst. v. Vermotion, Inc.*, No. Civ. A. 02-CV-7219, 2003 WL 21982137, at *1-*2 (E.D. Pa. June 10, 2003) (rejecting defendant's argument that the physical presence in the forum is a prerequisite for the exercise of jurisdiction).

state residents via the site, then the 'purposeful availment' requirement for personal jurisdiction is satisfied." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 n.2 (3d Cir. 2003). Numerous courts have held where, as here, a defendant maintains an interactive website whereby forum residents can purchase infringing materials, it is subject to personal jurisdiction within the forum for related lawsuits. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125-26 (W.D. Pa. 1997) ("We are being asked . . . whether Dot Com's conducting of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania.  We conclude that it does."); *Simoniz USA, Inc. v. Motor City Wash Works, Inc.*, Civ. A. No. 3:07-cv-392, 2007 WL 3355400, at *4 (D. Conn. Nov. 9, 2007) (denying motion to dismiss for lack of personal jurisdiction after determining defendant "purposefully directed" offers toward forum residents via an interactive website that solicited online orders).

Even if the Cambridge LSAT Website did not expressly target Pennsylvania residents, the Court would still have personal jurisdiction over Defendant.  At least two people located in Pennsylvania have purchased LSAT Materials from the Cambridge LSAT Website since the termination of the Licensing Agreement, and those materials were sent via e-mail to the purchasers in Pennsylvania.  *See* Gorman Decl. ¶¶ 26-29; Williams Decl. ¶¶ 9, 11.  The discovery produced by Defendant also shows that over 90 people with Pennsylvania addresses have made purchases of LSAT Materials through the Cambridge LSAT Website.  *See* Gorman Decl. Ex. 4.  Defendant admits to receiving revenue from the Cambridge LSAT Website and obtaining billing and shipping address information from customers, including customers with Pennsylvania billing and shipping addresses.  *See* Gorman Decl. ¶¶ 11, 12, 22; *see also id.* ¶ 27 (Cambridge LSAT Website requires customer to enter address as part of log in before making

purchase).[4]  Thus, Defendant has knowingly conducted business with residents of Pennsylvania through, *inter alia*, the Cambridge LSAT Website, and has subjected himself to jurisdiction for claims arising out of those sales.  *See, e.g.*, *Willyoung v. Co. Custom Hardware*, C.A. No. 1:08–cv–17-SJM, 2009 WL 3183061, at *12 (W.D. Pa. Sept. 30, 2009) (defendant purposefully availed itself of the privilege of conducting business in Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website"); *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398-401 (M.D. Pa. 2013) (finding personal jurisdiction where non-resident defendant's interactive website was used by Pennsylvania residents to place orders); *TRE Servs., Inc. v. U .S. Bellows, Inc.*, No. 2:12-cv-00663, 2012 WL 2872830, at *4-5 (W.D. Pa. July 12, 2012) (same); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, Civ. A. No. 08-2158, 2008 WL 4755350, at *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state.").[5]

> ## 2.      Defendant's Other Forum Contacts Further Demonstrate That the Exercise of Specific Jurisdiction Is Appropriate.

---

[4] That only a portion of Defendant's sales were made to Pennsylvanians does not undermine LSAC's jurisdictional arguments.  Courts have routinely rejected claims that a small portion of sales in the forum precludes a finding of specific personal jurisdiction.  *See, e.g.*, *Square D. Co. v. Scott Elec. Co.*, Civ. A. No. 06-00459, 2008 WL 4462298, at *9 n.10 (W.D. Pa. Sept. 30, 2008) (concluding that an amount equal to less than 1% of overall sales was sufficient to establish minimum contacts).  As noted in *Zippo*, "[t]he Supreme Court has made clear that even a single contact can be sufficient."  952 F. Supp. at 1127 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see also Square D.*, 2008 WL 4462298, at *9 n.10 (noting that, while an argument based on small number of sales to forum might be "valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiff's argument [of] purposeful[ ] avail[ment] [through] selling and shipping products to residents of the Commonwealth").

[5] During the November 5, 2015 Initial Pretrial Conference, the Court requested that LSAC address *Skidmore v. Led Zeppelin*, Civ. A. No. 14-3089, 2015 WL 2116632, at *5 (E.D. Pa. May 6, 2015), a case finding no personal jurisdiction over defendants in a copyright action.  *Skidmore* is readily distinguishable from the instant case.  First, unlike in *Skidmore,* where the parties cited evidence of jurisdictional contacts that was 17 years old, in the instant case, LSAC has pointed to numerous contacts that Defendant had with the forum from 2009 to the present.  *See, e.g.*, Gorman Decl. ¶ 26 (addressing purchase of infringing materials made two days ago); Williams Decl. ¶ 4 (discussing communications with Defendant occurring from 2009-2015).  Second, unlike in *Skidmore*, where there was no evidence defendants controlled where their products were sold or marketed, here, Defendant admits it exercises control over the Defendant Website and its marketing of LSAT Materials.  *See* Gorman Decl. ¶¶ 7-8.

Besides his internet-related contacts, Defendant has had numerous communications with Pennsylvania residents regarding LSAT Materials.  *See* Gorman Decl. ¶¶ 17, 21 (Defendant admits having communications with a person in Pennsylvania regarding LSAT Materials or Other Materials, and admits contacting LSAC to obtain LSAT Materials or Other Materials); Williams Decl. ¶¶ 4-8 (discussing communications from Defendant to LSAC in Pennsylvania). These contacts further demonstrate the propriety of exercising specific jurisdiction over Defendant.  *See Square D*, 2008 WL 4462298, at *6 ("A court may also consider related non-internet activities . . . as part of the purposeful availment analysis.").

### 3. This Lawsuit Arises Out of Defendant's Forum-Related Contacts.

LSAC contends that Defendant is liable for willful copyright infringement stemming from, *inter alia*, Defendant's use, reproduction, public display, and distribution of LSAC's copyrighted LSAT Materials.  *See* D.I. 1.  Defendant's advertisement of LSAT Materials on his website, solicitation of orders, and distribution of LSAT Materials, and revenue received therefrom (as discussed above) all give rise to the instant lawsuit.  Thus, the second requirement for exercise of specific jurisdiction is satisfied.  *See RCQ*, 2014 WL 4792148, at *6 (determining second requirement "readily satisfied because the allegedly infringing charms identified by RCQ are the precise same charms marketed and sold by Charms Plus to Pennsylvania residents through its website"); *Square D.*, 2008 WL 4462298, at *11 (finding the relatedness requirement satisfied where "at least one" of the products sold to a Pennsylvania resident by the defendant was from the allegedly infringing line of products at issue in the litigation).

### 4. Defendant's Willful Copyright Infringement in Pennsylvania Subjects Him to Specific Jurisdiction.

"A court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state."  *Carteret*

*Sav. Bank, FA*, 954 F.2d at 148.  Under the "effects test," specific jurisdiction exists where: (1) the defendant committed an intentional tort, (2) the plaintiff felt the brunt of the harm in the forum, and (3) the defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).  Here, Defendant's willful infringement of LSAC's copyrights provides an additional basis for exercising specific jurisdiction over Defendant.

**First**, willful copyright infringement is an intentional tort for purposes of the effects test. *See VaVi, Inc. v. Newton*, No. 13CV01128, 2013 WL 4499125, at *2 (S.D. Cal. Aug. 19, 2013).

**Second**, the focal point of the harm is Pennsylvania, because LSAC is located in Pennsylvania and has incurred damages here as a result of Defendant's willful infringement. *Wellness Publ'g, Inc. v. Barefoot*, 128 Fed. App'x. 266, 270 (3d Cir. 2005) (as a resident of the forum, appellant suffered the injury resulting from appellee's out-of-state conduct in the forum); *Ingram v. Page*, No. 98 C 8337, 1999 WL 569565, at *1 (N.D. Ill. July 28, 1999) ("Copyright infringement sounds in tort, and torts which involve damage to intellectual property generally 'occur' where the damage occurs" and, as a result, "such damage generally occurs where the copyright owner is located, thus the intellectual property tort is said to occur in the place where the copyright owner is located.").[6]

**Third**, Defendant has expressly aimed his conduct at Pennsylvania because, even though his business strategy may not focus exclusively on Pennsylvania, his willful infringement of a Pennsylvania resident's copyrights was unquestionably aimed at Pennsylvania.  *See Wellness*

---

[6] To the extent Defendant argues that infringement has occurred exclusively in California, he is incorrect.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 500-01 (2d Cir. 2011) (holding that under New York law, situs of injury was in New York when a copyrighted work owned by a New York publisher was uploaded onto the internet outside of New York and distributed on the internet for public access); *Acrison, Inc. v. Control & Metering Ltd.*, 730 F. Supp. 1445, 1448 (N.D. Ill. 1990) ("Damage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the *owner* suffers the damage.") (emphasis in original).

*Publ'g*, 128 Fed. App'x. at 270 (although appellee's business strategy did not target the forum, appellee's intentional interference with contract was expressly aimed at the forum, because contract beneficiary was a forum resident).

### 5.    The Exercise of Specific Jurisdiction Comports with Due Process.

As set forth in section II.A, *supra*, Defendant has the requisite minimum contacts with Pennsylvania to satisfy the first parts of the jurisdictional inquiry.   The Court must also determine whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice."   *See O'Connor*, 496 F.3d at 316.   Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant, at step three of the specific-jurisdiction-inquiry process, "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."   *Id.* at 324.   Defendant's burden in this regard is a significant one.   *See id.*; *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

In evaluating whether the exercise of specific jurisdiction comports with due process, the Supreme Court has identified several factors the Court should consider: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies."   *O'Connor*, 496 F.3d 312, 324 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

These factors weigh in favor of exercising personal jurisdiction over Defendant.   First, Pennsylvania has a strong interest in protecting its residents' intellectual property rights.   *See*

*Gentex*, 978 F. Supp. 2d at 401 ("Pennsylvania is undoubtedly interested in protecting the intellectual property of corporations doing business in the Commonwealth, and adjudicating disputes regarding alleged infringement is an important facet of that protection."). Second, LSAC is interested in enforcing its rights in a convenient forum – Pennsylvania. California does not appear to have any special interest in adjudicating harm suffered by a Pennsylvania resident.

Although Defendant wants to litigate in California and contends it would be a financial burden to litigate in Pennsylvania, this fact alone falls far short of meeting the demanding standard to demonstrate lack of fairness or substantial justice. *See generally O'Connor*, 496 F.3d at 312 ("[W]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."). After all, "[i]f [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its [products] to Pennsylvania residents." *Zippo*, 952 F. Supp. at 1126-1127.

### B.     This Action Is In the Proper Venue, and Should Not Be Transferred.

In his Motion, Defendant's only arguments that this forum is an improper venue are that (1) he is not subject to personal jurisdiction in this District, and (2) it would purportedly be a financial hardship for him to litigate in the instant forum where he has advertised and sold infringing products. Defendant's first argument fails because, for all of the reasons previously discussed in Section III.A, he is subject to personal jurisdiction in this district. Defendant's second argument also fails because financial hardship is not a basis for dismissal of a case, and Defendant cites to no authority to support such proposition. Indeed, "[m]ere financial hardship does not justify a transfer of venue." *See Select Med. Corp. v. Hardaway*, No. Civ. A. 05-3341, 2006 WL 859741, at *5 (E.D. Pa. Mar. 24, 2006).

An analysis under controlling law (which Defendant did not make) compels the conclusion that this action is properly venued and should not be transferred. The Third Circuit has emphasized that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879. As a result, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). Consequently, the burden rests squarely on the party seeking a transfer "to establish that a balancing of proper interests weigh in favor of the transfer." *Id.* That burden is a heavy one: "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (internal quotation marks omitted). In balancing the convenience of the parties and witnesses, the Court weighs the private and public interest factors set forth by the Third Circuit in *Jumara*.[7] In this case, this weighing favors against transferring this action.

      1.    **The *Jumara* Private Interest Factors Weigh Against Transfer.**

          a.    **LSAC's Choice of Forum Is Entitled to Paramount Deference.**

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request." *Shutte*, 431 F.2d at 25 (internal citations and quotation marks omitted); *see also McGovern v. GEICO*, Civ. A. No. 15-2313, 2015 WL 2330080, at *1 (E.D. Pa. May 14, 2015) (Kearney, J.) (noting that "decision to file in . . . home forum is afforded great weight and should not be lightly disturbed"). Here, LSAC has chosen to sue in the Eastern District of Pennsylvania, which is home to its principal place of

---

[7] The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, "but only to the extent the witnesses may be unavailable for trial in one of the fora;" and (6) the location of books and records, again only to the extent that they may not be available in one of the fora. *See Jumara*, 55 F. 3d at 879. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law. *Id.* at 879-80. Because this case is governed by federal law, the Court's familiarity with the state law factor is irrelevant to the Court's analysis, and, thus, is not addressed herein.

business.  Accordingly, LSAC's choice of forum is entitled to the utmost deference.  *See Lepage's, Inc. v. 3M*, No. Civ. A. 97-3983, 1997 WL 587355, at \*3 (E.D. Pa. Sept. 10, 1997) ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.").  Thus, this factor weighs strongly against transfer.

### b.  Defendant's Forum Preference Is Entitled to Little Weight.

Defendant would prefer to litigate in the Central District of California.  However, "[u]nder Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference."  *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012); *EVCO Tech. & Dec. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) ("Defendant's preference is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another.").  Thus, this factor should be given little weight in favor of transfer.

### c.  The Claim Arose in Pennsylvania, Thus Demonstrating That Pennsylvania Is the Appropriate Forum to Adjudicate It.

Copyright infringement claims arise where the copyright owner is located.  *See Ingram*, 1999 WL 569565, at \*1.  LSAC is in Pennsylvania.  Thus, this factor weighs against transfer.

### d.  The Convenience of the Parties Is Neutral.

Here, LSAC would prefer to litigate in the Eastern District of Pennsylvania, as that is a more convenient forum.  On the other hand, Defendant would prefer to litigate in the Central District of California.  Although Defendant contends he would suffer hardship if forced to litigate in the Eastern District of Pennsylvania, transferring this case to the Central District of California would shift the financial burden to LSAC.  A mere shift of the hardship in the event the Court would transfer the action demonstrates that this factor is neutral.  *See Select Med. Corp.*, 2006 WL 859741, at \*5 ("Regarding the convenience of the parties and witnesses,

- 14 -

[Defendant] has not met his burden . . . [because] transferring this case . . . will substitute the hardship of the California parties for the hardship of the Pennsylvania parties.").

### e.    Convenience of Witnesses Weighs Against Transfer.

In order to demonstrate that the convenience-of-witnesses factor favors transfer, it is Defendant's burden to "identify specific nonparty witnesses who may be unavailable for trial, and to demonstrate why those witnesses would find it more convenient to testify in another forum." *See Morrison v. Lindsey Lawn & Garden, Inc.*, Civ. A. No. 13-1467, 2014 WL 831570, at *4 (E.D. Pa. Mar. 4, 2014).  Defendant has failed to satisfy his burden.  Indeed, it appears from the parties' initial disclosures that nearly every witness identified therein is a party or party employee.  *See* Gorman Decl. ¶¶ 35-36.  However, "[t]he convenience of party witnesses or witnesses employed by a party is given minimal weight in this analysis because parties are obligated to produce the attendance of themselves and their employees." *Kiker v. Smithkline Beecham Corp.*, Civ. A. No. 14-1445, 2014 WL 4948624, at *7 (E.D. Pa. Oct. 1, 2014).  To the extent the convenience of witnesses is given any weight, LSAC and Defendant have identified a total of five witnesses with addresses within the Eastern District of Pennsylvania and only one witness – Defendant – located in the California.  Accordingly, this factor weighs against transfer.

### f.    The Location of Books and Records Is Neutral.

This factor is only relevant to the extent that books and records could not be produced in the alternative forum.  *See Pa. Mach. Works, Inc. v. N. Coast Remanfg. Corp.*, No. Civ. A. 04-1731, 2004 WL 2600117, at *7 (E.D. Pa. Nov. 16, 2004).  Here, no evidence exists that the parties cannot produce their documents in either forum.  Accordingly, this factor is neutral.

### 2.    The *Jumara* Public Interest Factors Weigh Against Transfer.

### a.    Enforceability of the Judgment Is a Neutral Factor.

A judgment resulting from this action would be enforceable in either California or Pennsylvania, and, thus, this factor is neutral.

> **b.     Practical Considerations That Would Make Trial Easier Weigh Against Transfer.**

Given that the majority of witnesses at trial will likely be from LSAC, it will practically be easier and less expensive to hold the trial in the Eastern District of Pennsylvania versus the Central District of California.  *See generally Smith v. Hireright Sol., Inc.*, Civ. A. No. 09-6007, 2010 WL 2270541, at *9 (E.D. Pa. June 7, 2010) (noting that where majority of witnesses are located in one forum, this makes that forum the practically more convenient forum).

> **c.     Court Congestion Weighs Against Transfer.**

A study of U.S. District Courts across the United States during the 12-month period ending March 31, 2014 demonstrates that the median time to trial in the Eastern District of Pennsylvania is 16.7 months, whereas the median time to trial in the Central District of California is 21.4 months.  *See* Gorman Decl. ¶ 37; *id.*, Ex. 19.  Accordingly, because the court congestion is less in the Eastern District of Pennsylvania when compared to the Central District of California, this factor weighs against transfer.

In fact, the California Action is already on a much slower schedule than this action.  This Court has conducted an initial pretrial conference, and has set a schedule with all discovery to be completed by February 5, 2016.  *See* D.I. 13.  In the California Action, the Court will not even convene an initial Rule 16 conference until January 25, 2016.  Gorman Decl. ¶ 31.  As such, transfer of this case would likely result in a delayed adjudication of the parties' dispute.

> **d.     Local Interest in the Controversy and Public Policy Weigh Against Transfer.**

There is "no question" that this forum has a strong interest in adjudicating disputes involving the alleged infringement of intellectual property owned by a Pennsylvania resident.

*Zippo*, 952 F. Supp. at 1127.  California, on the other hand, has little interest in protecting the rights of a Pennsylvania citizen.  Accordingly, the local interest in the controversy and public policy factors weigh against transfer.

     **C.**     **The Existence of the California Action Does Not Warrant Dismissal of the Instant Action.**

     This Court should not dismiss this action in favor of the California Action for many reasons:  ***First***, courts within the Third Circuit have routinely declined to defer to a first-in-time filed action where, as here, it was merely an anticipatory filing by a party hoping to win the race to the courthouse and avoid litigating in a less-favorable forum.  This is because "the first-to-file rule is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, ***anticipatory filing or forum shopping.***"  *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 738 (E.D. Pa. 2005) (emphasis in original); *see EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988) ("District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.").  Indeed, "[e]xceptions to the first-filed rule are not rare and are made when justice or expediency requires."  *Drugstore-Direct, Inc. v. The Cartier Div. of Richemont N.A., Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004).  When a court is faced with a first-filed challenge, a "paramount" concern is "whether the first-filed action was filed in apparent anticipation of imminent judicial proceedings by the opposing party."  *IMS Health, Inc. v. Vality Tech. Inc.*, 59 F. Supp. 2d 454, 463 (E.D. Pa. 1999).  This is particularly true where, as here, a declaratory action is brought in anticipation of impending litigation elsewhere.  *See FMC Corp.*, 379 F. Supp. 2d at 745 (declining to follow the first-filed rule where "[i]t appears from the instant record that [the first-filer] wished to circumvent this Court's jurisdiction over the instant matter as a 'related action' and preempt FMC's filing in the Eastern

- 17 -

District of Pennsylvania"); *PPL Energy Servs. Holdings, Inc. v. Zoot Props., LLC*, C. A. No. 05-6610, 2006 WL 2524228, at *3 (E.D. Pa. Aug. 30, 2006) ("In this case, the Court will exercise its discretion and decline to apply the first-filed rule because it is clear that the Defendants filed the Montana action to avoid litigating in the Eastern District of Pennsylvania.").

Here, the events occurring prior to the filing of the California Action demonstrate that it is an improperly filed anticipatory lawsuit. While the parties were engaged in settlement negotiations regarding claims arising out of Mr. Tatro's use of LSAC's copyrighted materials, Mr. Tatro filed the California Action for tactical forum-shopping reasons. Indeed, in the California Action complaint, Mr. Tatro admitted that the reason for filing the lawsuit while settlement discussions were ongoing was to seek relief in advance of LSAC's potential lawsuit for copyright infringement. *See* Gorman Decl., Ex. 12 (California Action Original Compl.) ¶ 1 ("[LSAC] . . . has, ***instead, repeatedly and wrongfully threatened to take legal action against Plaintiff in Pennsylvania*** on certain claims released by the contract.") (emphasis added); ¶ 10 ("In breach of its obligations under the Contract, TATRO is informed and believes that LSAC intends to proceed with pursuing legal action against TATRO in the state of Pennsylvania alleging copyright infringement."); ¶ 19 (referencing fact that LSAC had stated "its intention to sue[Tatro] in Pennsylvania . . . .). Such conduct is "procedural gamesmanship" and "classic forum shopping or forum avoidance, which runs contrary to the equitable goals of the first filed rule." *PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, Civ. A. No. 09-00896, 2009 WL 2326750, at *6 (E.D. Pa. July 28, 2009) (denying defendant's motion to dismiss or stay due to forum shopping and anticipatory filing).

***Second***, there is no need for the Court to defer to the California Action where the California Court has already wholly dismissed Mr. Tatro's original, meritless claims. *See*

*Morley Cambridge Tatro v. Law Sch. Admission Council, Inc.*, Civil – Minutes General (Gorman Decl. Ex. 14) at 7-8.  Although the California Court granted Mr. Tatro leave to file an amended complaint, the Court cast serious doubt on the viability of any such claim.  *See id.* at 7 (emphasizing permitting filing of amended claim was no "guarantee [of] success" for claim). Indeed, the sole claim in the Amended Complaint disregards the plain language of the parties' Licensing Agreement, and is ripe for early resolution in favor of LSAC, whether by Motion to Dismiss or for Judgment on the Pleadings.

  ***Third***, application of the first-filed doctrine is not warranted because resolution of the California Action would still leave material issues regarding Mr. Tatro's willful infringement that have to be resolved in the instant action.  "[T]he Third Circuit has narrowly construed the first-filed rule, holding that the rule applies only where the two proceedings are 'truly duplicative,' that is, where both the first and later-filed cases are 'materially on all fours' with one another."  *Jermax, Inc. v. AK Steel Corp.*, Civ. A. No. 09-cv-4438, 2010 WL 2652276, at \*7 (D.N.J. June 24, 2010) (citing *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007).  Thus, application of the first-filed doctrine is reserved for situations in which a determination in one action leaves little to nothing to be determined in the other.  *See id.*  Here, the complaint in the California Action has been reduced to a single, limited declaratory judgment claim that seeks confirmation that Mr. Tatro was entitled to a 30-day notice period before termination of the parties' Licensing Agreement.  At most, a ruling on this claim in Mr. Tatro's favor would merely extend the time that Defendant was licensed under the Licensing Agreement by a few weeks.  Such a ruling would ***not*** preclude a finding that Defendant committed copyright infringement after expiration of the purported 30 day notice period, nor would it preclude a finding that Defendant is liable for copyright infringement for unlicensed use of the LSAT

Materials while the Licensing Agreement was in effect – the two issues at the core of the instant litigation.  Because the California Action – to the extent it is even viable – will not address the critical issues of this litigation, it should not be a basis for dismissal of this action.

## IV.   CONCLUSION

For the reasons set forth herein, LSAC respectfully requests that the Court deny Defendant's Motion.

Respectfully submitted,

DATED:  December 11, 2015

/s/ John V. Gorman_____
John V. Gorman (PA Bar No. 80631)
jgorman@morganlewis.com
Amy M. Dudash (PA Bar No. 311898)
adudash@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  215.963.5000
Fax:  215.963.5001

Anita B. Polott (*pro hac vice* application forthcoming)
apolott@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington, DC  20004-2541
Tel:  202.739.3000
Fax:  202.739.3001

## <u>CERTIFICATE OF SERVICE</u>

I, John V. Gorman, hereby certify that on December 11, 2015, I caused a copy of the

foregoing document to be filed via the Court's CM-ECF system, which will send electronic

notice to the following:

Julie D. Lathia, Esquire
The Law Offices of Julie D. Lathia
212 West Gay Street
West Chester, PA  19380

Eric Meinhardt, Esquire
Lexero Law
316 F. Street NW
Suite 101
Washington, DC  20002

*/s/ John V. Gorman*
John V. Gorman