**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAW SCHOOL ADMISSION COUNCIL, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 15:5219-MAK |
| MORLEY TATRO, d/b/a CAMBRIDGE LSAT | |
| Defendant. | |

**NOTICE OF PLAINTIFF LAW SCHOOL ADMISSION COUNCIL, INC. OF
MOTION TO DISMISS CALIFORNIA ACTION BETWEEN THE PARTIES**

Plaintiff Law School Admission Council, Inc. ("LSAC") hereby notifies the Court that, on December 17, 2015, it moved to dismiss the amended complaint filed in the Central District of California action captioned *Morley Cambridge Tatro v. Law Sch. Admission Council, Inc., et al.,* Case No. 2:15-cv-07627-RGK–JEM ("California Action").   A copy of the motion is attached.  The motion relates to section III.C of LSAC's Opposition to Defendant's Motion To Dismiss For Lack of Personal Jurisdiction And Improper Venue (Docket Index No. 24).

Dated:        December 18, 2015

Respectfully submitted,

/s/ John V. Gorman
John V. Gorman (PA Bar No. 80631)
jgorman@morganlewis.com
Amy M. Dudash (PA Bar No. 311898)
adudash@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  215.963.5000
Fax:  215.963.5001

<u>**CERTIFICATE OF SERVICE**</u>

I, John V. Gorman, hereby certify that on December 18, 2015, I caused a copy of

the foregoing document to be filed via the Court's CM-ECF system, which will send electronic

notice to the following:

Julie D. Lathia, Esquire
The Law Offices of Julie D. Lathia
212 West Gay Street
West Chester, PA  19380

Eric Meinhardt, Esquire
Lexero Law
316 F. Street NW
Suite 101
Washington, DC  20002

*/s/ John V. Gorman*
John V. Gorman

Monique E. Cho (Bar No. 252203)
mcho@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501

John V. Gorman (admitted *pro hac vice*)
jgorman@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
Fax: 215.963.5001

Anita B. Polott (admitted *pro hac vice*)
apolott@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington, DC 20004-2541
Tel: 202.739.3000
Fax: 202.739.3001

***Attorneys for Defendant Law School
Admission Council, Inc.***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORLEY CAMBRIDGE TATRO,<br><br>Plaintiff,<br><br>vs.<br><br>LAW SCHOOL ADMISSION<br>COUNCIL, INC. and DOES 1-50,<br><br>Defendants. | Case No. 2:15-cv-07627-RGK-JEM<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO TRANSFER BY LAW SCHOOL ADMISSION COUNCIL, INC.**<br><br>**[FED. R. CIV. P. 12(B)(6); FED. R. CIV. P. 12(B)(1); 28 U.S.C. § 1404(A), 28 U.S.C. § 2201]**<br><br>Judge: Hon. R. Gary Klausner<br>Date: January 25, 2016<br>Time: 9:00 a.m.<br>Courtroom: 850 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:15-CV-07627-RGK-JEM
NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S COMPLAINT, OR,
IN THE ALTERNATIVE, TO TRANSFER

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 25, 2016 at 9:00 am, or on such other date to be set by the Court, at 312 N. Spring St., Los Angeles, CA 90012, in Courtroom 850, before the Honorable R. Gary Klausner, defendant Law School Admission Council, Inc. ("LSAC") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and 28 U.S.C. § 2201 for an order dismissing the First Amended Complaint (Docket Index 28) ("Amended Complaint") filed by plaintiff Morley Cambridge Tatro ("Plaintiff"). In the alternative, LSAC will and hereby does move the Court, pursuant to 28 U.S.C. § 1404(a), to transfer the instant action to the United States District Court for the Eastern District of Pennsylvania.

**LSAC moves to dismiss the Amended Complaint on the following grounds**:

*First*, the Court should exercise its discretion to dismiss this declaratory judgment action, which is precisely the type of action that courts routinely dismiss in favor of later-filed actions – *i.e.*, a tactically-filed declaratory judgment action meant to disrupt settlement discussions and to win the race to the courthouse before LSAC could file its own affirmative copyright infringement action.

*Second*, the Court should dismiss the Amended Complaint with prejudice because it fails to state a claim for relief. Plaintiff's claim is premised on a purported right to 30 days notice before license termination found in LSAC's Licensing Policy, but by its express terms, the Licensing Policy does not displace LSAC's right to terminate the Licensing Agreement for any reason at any time.

**LSAC moves in the alternative to transfer this action to the Eastern District of Pennsylvania on the following ground**:

Even if the Court were to conclude that the Amended Complaint could survive dismissal, the Court should exercise its discretion to transfer the instant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2:15-CV-07627-RGK-JEM
NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S
AMENDED COMPLAINT, OR, IN THE
ALTERNATIVE, TO TRANSFER

1 action to the United States District Court for the Eastern District of Pennsylvania
2 where the parties are already litigating, engaging in discovery, and proceeding to a
3 trial in a case involving overlapping – yet broader – factual and legal issues because
4 the interests of justice and convenience factors warrant transfer.

5      This Motion is made following a conference of counsel. LSAC did not
6 decide to dismiss the Amended Complaint until after seven days before the date of
7 filing the instant Motion. Upon determining that it was going to move to dismiss
8 the Amended Complaint, LSAC's counsel promptly contacted Plaintiff's counsel to
9 confer regarding the Motion. Although Plaintiff's counsel was unavailable for
10 several days, counsel for the parties were able to confer before the filing of the
11 Motion, and LSAC's counsel presented the bases for its Motion, but counsel were
12 unable to resolve their disputes regarding the issues presented herein. While LSAC
13 hereby notices the hearing date for its motion for January 25, 2016, it has no
14 objection to rescheduling the hearing date to Monday, February 1, 2016.

15      This Motion is based on this Notice of Motion and Motion, the Memorandum
16 of Points and Authorities filed concurrently herewith, the Request for Judicial
17 Notice and accompanying documents filed therewith, the Reply filed in support of
18 the Motion, all pleadings and papers on file or to be filed in the above-entitled
19 action, arguments of counsel, and any other matters that may properly come before
20 the Court for its consideration.

21 Dated: December 17, 2015        MORGAN, LEWIS & BOCKIUS LLP
22

23                       */s/ John V. Gorman*
24                       Monique E. Cho
25                       John V. Gorman
                       Anita Polott
26                       ***Attorneys for Defendant Law School***
                       ***Admission Council, Inc.***
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

2:15-CV-07627-RGK-JEM
NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S
AMENDED COMPLAINT, OR, IN THE
ALTERNATIVE, TO TRANSFER

Monique E. Cho (Bar No. 251949)
mcho@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501

John V. Gorman (admitted *pro hac vice*)
jgorman@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
Fax: 215.963.5001

Anita B. Polott (admitted *pro hac vice*)
apolott@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington, DC 20004-2541
Tel: 202.739.3000
Fax: 202.739.3001

***Attorneys for Defendant Law School
Admission Council, Inc.***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORLEY CAMBRIDGE TATRO,<br><br>Plaintiff,<br><br>vs.<br><br>LAW SCHOOL ADMISSION COUNCIL, INC. and DOES 1-50<br><br>Defendants. | Case No. 2:15-cv-07627-RGK-JEM<br><br>**DEFENDANT LAW SCHOOL ADMISSION COUNCIL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**<br><br>Judge: Honorable R. Gary Klausner<br>Date: January 25, 2016<br>Time: 9:00 a.m.<br>Courtroom: 850 |

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................. 2

    A.    The Parties' Licensing Relationship ...................................... 2

    B.    The Instant Action ................................................................. 3

    C.    The Pennsylvania Action ...................................................... 4

III.    ARGUMENT ..................................................................................... 4

    A.    The Court Should Exercise Its Discretion to Decline Jurisdiction Over the Instant Declaratory Judgment Action. .................................... 4

        1.    A Court Has Broad Discretion to Decline to Exercise Declaratory Judgment Jurisdiction ............................... 5

        2.    Each of the Applicable Factors Weighs In Favor of This Court Declining to Exercise Declaratory Judgment Jurisdiction .................................................................. 5

        3.    The First-Filed Doctrine Is Inapplicable to This Anticipatory Lawsuit ......................................................... 9

    B.    The Court Should Dismiss This Action Because Plaintiff Has Not Stated a Cognizable Claim For Relief. ........................ 10

        1.    The Court May Dismiss Plaintiff's Claim Based on Plain and Unambiguous Language of the Licensing Agreement ...... 10

        2.    Plaintiff's Allegations Regarding Purported Breach Fail as a Matter of Law ................................................. 10

    C.    Alternatively, the Court Should Transfer the Instant Action to the Eastern District of Pennsylvania. ................................. 13

        1.    The Instant Action Could Have Been Brought In Pennsylvania ........................................................... 13

        2.    The Convenience Factors Weigh In Favor of Transfer ........... 14

            a.    Plaintiff's Choice of Forum Is Entitled to Little Weight ................................................................ 14

            b.    The Convenience of Parties Factor Is Neutral .............. 14

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

|  |  | c. | The Convenience of Witnesses Factor Weighs In Favor of Transfer............................................................ 14 |
|  |  | d. | Ease of Access to Evidence Is a Neutral Factor............. 15 |
|  | 3. |  | The Interest of Justice Factors Weigh In Favor of Transfer.................................................................................. 15 |
|  |  | a. | Court's Familiarity With Governing Law Is Neutral..... 15 |
|  |  | b. | Feasibility of Consolidation With Other Claims Favors Transfer............................................................... 16 |
|  |  | c. | Local Interest In the Controversy Is Neutral.................. 16 |
|  |  | d. | Relative Court Congestion Weighs In Favor of Transfer........................................................................... 16 |
| IV. | CONCLUSION |  | .......................................................................... 17 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Budget Rent A Car Corp. v. Miljack, Inc.*,
 760 F. Supp. 135 (N.D. Ill. 1991)........................................................................ 8

*Burke v. USF Reddaway, Inc.*,
 No. 2:12-cv-02641, 2013 WL 85428 (E.D. Cal. Jan. 8, 2013) ......................... 15

*Campbell v. Allstate Ins. Co.*,
 No. 97-9426, 1998 WL 657488 (C.D. Cal. Aug. 6, 1988).............................. 10

*Cardoza v. T–Mobile USA Inc.*,
 No. 08–5120, 2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ............................ 16

*Decker Coal Co. v. Commonwealth Edison Co.*,
 805 F.2d 834 (9th Cir. 1986) ............................................................................ 13

*Ellsworth v. U.S. Bank, N.A.*,
 908 F. Supp. 2d 1063 (N.D. Cal. 2012)............................................................. 10

*Gerin v. Aegon USA, Inc.*,
 No. 06–5407, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007) ............................ 15

*Gov't Emps. Ins. Co. v. Dizol*,
 133 F.3d 1220 (9th Cir. 1997) ............................................................................ 5

*Gribin Galleries, Div. of Hammer Holdings, Inc.*,
 793 F. Supp. 233 (C.D. Cal. 1992)

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
 179 F.R.D. 264 (C.D. Cal. 1998) ...................................................................... 13

*Inherent.com v. Martindale-Hubbell, Lexis/Nexis, Inc.*,
 420 F. Supp. 2d 1093 (N.D. Cal. 2006)............................................................... 9

*Ins. Co. of N. Am. v. Fed. Exp. Corp.*,
 189 F.3d 914 (9th Cir. 1999) ............................................................................ 11

*Int'l Bhd. of Teamsters v. N. Am. Airlines*,
 No. C05-0126, 2005 WL 947083 (N.D. Cal. Apr. 20, 2005)……………….…15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

*K-Swiss, Inc. v. Puma AG Rudolf Dassler Sport*,
No. CV 09-3022, 2009 WL 2049702 (C.D. Cal. July 9, 2009) ..........................6

*Kinetic Concepts, Inc. v. Connetics Corp.*,
No. Civ. A. SA-04-CA0237XR, 2004 WL 2026812 (W.D. Tex. Sept. 8,
2004) ................................................................................................................6, 8

*Koch Eng'g Co. v. Monsanto Co.*,
621 F. Supp. 1204 (E.D. Mo. 1985) ..................................................................8

*Lateena Girls, LLC v. Latina Media Ventures, LLC*,
No. SA-06-CA-217-RF, 2006 WL 2547884 (W.D. Tex. Aug 9, 2006) ..............8

*Logan v. Union Sec. Ins. Co.*,
No. CV 14–1174 DMG, 2015 WL 3745047 (C.D. Cal. Mar. 31, 2015) ...........12

*Martin v. U-Haul Co. of Fresno*,
204 Cal. App. 3d 396 (Cal. Ct. App. 1988) ......................................................7

*Maryland Cas. Co. v. Knight*,
96 F.3d 1284 (9th Cir. 1996) .............................................................................6

*Mass Bonding Ins. Co. v. Johnston & Harder*,
35 A.2d 721 (Pa. 1943) ......................................................................................7

*May v. Haas*,
No. 2:12-cv-01791, 2013 WL 4010293 (E.D. Cal. Aug. 5, 2013) ...................15

*Mendler v. Winterland Production, Ltd.*,
207 F.3d 1119 (9th Cir. 2000) .........................................................................10

*Metz v. U.S. Life Ins. Co.*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009) ......................................................14, 15

*Mieuli v. DeBartolo*,
No. C-00-3225, 2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ..........................10

*Oliver & Tater Enters., Inc. v. Foundations Worldwide, Inc.*,
No. CV 13-01683-RGK, 2013 WL 4446827 (C.D. Cal. June 18, 2013) ............9

*Schmitt v. JD Edwards World Solutions Co.*,
No. C. 01-1009, 2001 WL 590039 (N.D. Cal. May 18, 2001) ...........................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-iv-

*Sprengel v. Mohr*,
No. CV 11-08742-MWF, 2013 WL 645532 (C.D. Cal. Feb. 21, 2013) .............. 7

*Stewart Org., Inc v. Ricoh Corp.*,
487 U.S. 22 (1988) ......................................................................................... 13

*Szegedy v. Keystone Food Prods.*,
No. CV 08-5369, 2009 WL 2767683 (C.D. Cal. Aug. 26, 2009) ..................... 15

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ............................................................................ 1

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ......................................................................................... 5

*Xoxide, Inc. v. Ford Motor Co.*,
448 F. Supp. 2d 1188 (C.D. Cal. 2006) ......................................................... 6, 9

## STATUTES

28 U.S.C. § 1404(a) ............................................................................... 1, 2, 13

Ann. Cal. Civ. Code § 1641 ............................................................................. 12

28 U.S.C. 2201 .................................................................................................. 1

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

–v–

2:15-CV-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

# I.    INTRODUCTION

Defendant Law School Admission Council, Inc. ("LSAC") moves to dismiss the First Amended Complaint (Docket Index ("D.I.") 28) ("FAC" or "Amended Complaint") filed by plaintiff Morley Cambridge Tatro ("Plaintiff" or "Mr. Tatro") pursuant to this Court's discretionary authority under the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, or, in the alternative, to transfer the action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

First, the Court should exercise its discretion to dismiss this declaratory judgment action because it is precisely the type of action that courts routinely dismiss in favor of later-filed actions – *i.e.*, a tactically-filed declaratory judgment action meant to disrupt settlement discussions and to win the race to the courthouse before LSAC could file its own affirmative copyright infringement action.  By Plaintiff's own admission, he filed this case because LSAC told him that if settlement negotiations did not result in resolution, LSAC would file a copyright infringement action in Pennsylvania.

Second, the Court should dismiss the Amended Complaint because it fails to state a claim for relief.  Plaintiff's claim is premised on a misguided and unsupported reading of the parties' contract – the Licensing Agreement[1] – which unambiguously provides that LSAC has an unfettered right to terminate the

---

[1] Although the Amended Complaint references the Licensing Agreement (attached hereto as Exhibit A) and LSAC's LSAT-Question Licensing Policy ("Licensing Policy") (attached hereto as Exhibit B) and purports to attach these two documents to the pleading, FAC ¶ 9, neither the Licensing Agreement nor the Licensing Policy were, in fact, attached.  However, the Court may consider these documents in deciding the instant Motion because these documents are referenced extensively in the Amended Complaint and form the basis for Plaintiff's claim.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

Licensing Agreement at any time for any reason.  Plaintiff's claim is premised on a purported right to 30 days notice before license termination found in LSAC's Licensing Policy.  However, by its express terms, the Licensing Policy does not displace the parties' bargained for contractual language contained in the Licensing Agreement.  Thus, Plaintiff's declaratory judgment claim fails as a matter of law.

Third, even if the Court were to conclude that the Amended Complaint could survive dismissal, the Court should exercise its discretion to transfer the instant action to the United States District Court for the Eastern District of Pennsylvania where the parties are already litigating, engaging in discovery, and proceeding to a trial in a case involving overlapping – yet broader – factual and legal issues.

## II.    FACTUAL BACKGROUND

### A.    <u>The Parties' Licensing Relationship.</u>

LSAC is a non-profit corporation that administers the Law School Admission Test ("LSAT").  *See* FAC ¶ 3.  Since 2009, LSAC has licensed to Plaintiff the non-exclusive right to use, print, reproduce and distribute certain questions from previous LSATs ("LSAT Questions") under certain conditions.  *See id.* ¶ 9.  The parties' most recent agreement was set forth in a Licensing Agreement dated June 15, 2015.  *See id.*; Ex. A.  In the first paragraph, the License Agreement states that it "is subject to LSAC's LSAT-Question Licensing Policy and the following terms and conditions."  *Id.*  Paragraph 2 of the Licensing Agreement governs the license term of the parties' agreement.  It states:

> This license expires June 30, 2017, but may be renewed at the option of LSAC if the licensed questions are still published by LSAC.  Any violation of any term or condition of this license voids the license.  ***In addition, LSAC may terminate this license at its sole discretion at any time and for any reason***.

*See* Ex. A. ¶ 2 (emphasis added).  To the extent that the Licensing Policy deals with the license term, it expressly defers to the language of the License Agreement.  *See* Ex. B at 1 ("Term of the Agreement.  ***Unless otherwise specified in the licensing***

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

1 **agreement**, all new licenses and license renewals begin on July 1 of the initial year
2 and expire on June 30 of the second year.") (emphasis added). Thus, under the
3 express terms of the License Agreement, the license term ends June 30, 2017, or
4 whenever LSAC terminates it, whichever is sooner.

5       **B.**    <u>**The Instant Action.**</u>

6       On August 4, 2015, LSAC sent Mr. Tatro an e-mail communication
7 terminating the License Agreement effective August 15, 2015. *See* Original
8 Complaint, Dkt. No. 1, Ex. 1 (attached as Exhibit 1 to Declaration of John V.
9 Gorman ("Gorman Decl.") filed contemporaneously with Request for Judicial
10 Notice). Thereafter, the parties entered into negotiations to attempt to resolve their
11 dispute regarding, *inter alia*, Mr. Tatro's impermissible use of LSAT's copyrighted
12 materials. *Id.* ¶ 7. On September 2, 2015, while in the midst of these negotiations,
13 Mr. Tatro filed the Original Complaint against LSAC in California state court
14 asserting claims for breach of contract, breach of the covenant of good faith and fair
15 dealing, and declaratory judgment. *See id.* In the Original Complaint, Mr. Tatro
16 admitted that the basis for the lawsuit was that LSAC had informed him that, if the
17 parties could not resolve their dispute, LSAC would file suit for copyright
18 infringement in Pennsylvania. *See* D.I. 1, Ex. 1 (Gorman Decl., Ex. 1) ¶¶ 1, 10, 19.
19 LSAC subsequently removed the action to the instant court. *See* D.I. 1.

20       On November 19, 2015, this Court dismissed the Original Complaint in its
21 entirety. *See* D.I. 27. The Court dismissed the majority of Mr. Tatro's claims with
22 prejudice, but allowed him an opportunity to file an amended complaint containing
23 only a claim regarding breach of the Licensing Agreement. *Id.* at 7. On November
24 30, 2015, Mr. Tatro filed the Amended Complaint containing a single claim for
25 relief – *i.e.*, a claim seeking a judicial declaration that LSAC did not properly
26 terminate the Licensing Agreement because it failed to provide Mr. Tatro with 30
27 days notice prior to terminating the Licensing Agreement. *See* FAC.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

### C. The Pennsylvania Action.

As promised, on September 18, 2015, LSAC filed a complaint against Mr. Tatro for willful copyright infringement in the United States District Court for the Eastern District of Pennsylvania. *See* Complaint, *Law Sch. Admission Council, Inc. v. Morley Tatro d/b/a Cambridge LSAT*, C.A. No. 2:15-cv-05219-MAK (E.D. Pa.) (the "Pennsylvania Action") (attached as Exhibit 2 to the Gorman Decl.). In the Pennsylvania Action, LSAC seeks damages for Mr. Tatro's unauthorized use of LSAC's copyrighted materials during different time periods, including: (1) the time period after the Licensing Agreement was terminated, and (2) the time period during which Mr. Tatro was subject to a license, but also during which he used LSAC's copyrighted materials in a manner inconsistent with and beyond the scope of the terms of the Licensing Agreement, and therefore, in a manner unlicensed by LSAC. *See id.*

### III. ARGUMENT

#### A. The Court Should Exercise Its Discretion to Decline Jurisdiction Over the Instant Declaratory Judgment Action.

The Declaratory Judgment Act was not intended to be a strategic procedural vehicle whereby a putative defendant – such as Mr. Tatro – could strip a putative plaintiff – such as LSAC – of its choice of forum or a tool to reward the winner of a race to the courthouse. However, this is precisely what Mr. Tatro has attempted to do in filing the instant action. While this case is technically the first-filed in terms of timing, it is not entitled to any deference in determining which action should proceed. Accordingly, the Court should exercise its discretion to dismiss the instant action in favor of the Pennsylvania Action.

### 1. A Court Has Broad Discretion to Decline to Exercise Declaratory Judgment Jurisdiction.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "The normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288; *see also id.* ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.").

### 2. Each of the Applicable Factors Weighs In Favor of This Court Declining to Exercise Declaratory Judgment Jurisdiction.

In evaluating whether to exercise declaratory judgment jurisdiction, the Court may consider a variety of factors, including, *inter alia*, (1) discouraging litigants from filing declaratory actions as a means of forum shopping; (2) avoiding duplicative litigation; (3) whether the declaratory action will settle all aspects of the controversy; (4) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (5) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; and (6) convenience of the parties and relative convenience of other remedies. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 & n.5 (9th Cir. 1997).[2] Here, these factors weigh in favor of declining declaratory judgment

---

[2] These factors were initially discussed in connection with a court's decision to decline to exercise jurisdiction over a federal action where there was a state court action pending, but they are equally applicable to the decision to decline to exercise jurisdiction in favor of another pending federal court action. *See Gribin Galleries, Div. of Hammer Holdings, Inc.*, 793 F. Supp. 233, 234 n.1 (C.D. Cal. 1992) (dismissing first-filed declaratory judgment action in favor of later-filed federal court action, and noting that these factors "appl[y] where the parallel action is pending in another federal district").

jurisdiction.

First, the events giving rise to the instant action demonstrate that it was nothing more than an improperly filed anticipatory lawsuit used for procedural fencing. While the parties were engaged in settlement negotiations regarding claims arising out of Mr. Tatro's use of LSAC's copyrighted materials, Mr. Tatro filed the instant litigation for tactical forum-shopping reasons. Indeed, in the Original Complaint, Mr. Tatro admitted that the reason for filing the lawsuit was to seek relief in advance of LSAC's potential lawsuit in Pennsylvania. *See* D.I. 1, Ex. 1 (Gorman Decl., Ex. 1) ¶ 1 ("[LSAC] . . . has, instead, repeatedly and ***wrongfully threatened to take legal action against Plaintiff in Pennsylvania*** on certain claims released by the contract.") (emphasis added); ¶ 10 ("In breach of its obligations under the Contract, TATRO is informed and believes that LSAC intends to proceed with pursuing legal action against TATRO in the state of Pennsylvania alleging copyright infringement."); ¶ 19 (referencing fact that LSAC had stated "its intention to sue [Tatro] in Pennsylvania . . . .). Where a first-filed case is "reactive" to a second-filed case, a "district court should consider dismissing the [first] case pursuant to its discretion under the Act." *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 (9th Cir. 1996). This action is plainly a reaction to the claims that LSAC brought in the Pennsylvania Action.

Plaintiff's conduct is the precise sort of procedural gamesmanship that courts routinely find warrants dismissal of a "first-filed" action. *See Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (dismissing first-filed action due to anticipatory forum shopping); *K-Swiss, Inc. v. Puma AG Rudolf Dassler Sport*, No. CV 09-3022, 2009 WL 2049702, at *3 (C.D. Cal. July 9, 2009) (same); *Schmitt v. JD Edwards World Solutions Co.*, No. C. 01-1009, 2001 WL 590039, at *3 (N.D. Cal. May 18, 2001) (same); *Kinetic Concepts, Inc. v. Connetics Corp.*, No. Civ. A. SA-04-CA0237XR, 2004 WL 2026812, at *5 (W.D. Tex. Sept. 8, 2004) (same).

Second, dismissing this case will avoid duplicative litigation of a limited issue that Plaintiff potentially will raise as a defense in the Pennsylvania Action: *i.e.*, whether the Licensing Agreement contained a notice provision that gave Mr. Tatro license rights in LSAC's copyrighted material beyond August 15, 2015. *See Sprengel v. Mohr*, No. CV 11-08742-MWF, 2013 WL 645532, at *9 (C.D. Cal. Feb. 21, 2013) ("The existence of a license is an affirmative defense to a claim of copyright infringement and the burden of proof is ultimately on the party seeking to avoid infringement liability."). Dismissing the instant case will avoid the prospect of inconsistent verdicts on this issue.

Third, this Court should dismiss this case because resolution of the sole issue in this action will not completely resolve the Pennsylvania Action. Even if Mr. Tatro's declaratory judgment claim was somehow cognizable (which, as discussed at § III.B, *infra*, it is not), a ruling in his favor would, at most, merely extend the time that he was licensed under the Licensing Agreement by a few weeks.[3] *See Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396, 407-09 (Cal. Ct. App. 1988) (determining damages limited to those that could reasonably have accrued during 30 day notice period required for termination of contract "[b]ecause of the 30-day notice provision neither party to the dealership contract could reasonably anticipate that damages resulting from a breach of that contract would exceed those potentially accruing during a 30-day period after the breach"); *Mass Bonding Ins. Co. v. Johnston & Harder*, 35 A.2d 721, 726 (Pa. 1943) ("The most that defendant is entitled to under this record is the loss of thirty days' net profits by reason of the failure of the plaintiff to give it due notice of [30 days before] the cancellation.")[4]

---

[3] Plaintiff alleges that he did not receive the 30 days notice purportedly required. LSAC expressly reserves its right to asserts that it did in fact provide notice of material breach to Plaintiff 30 days prior to termination of the Licensing Agreement and that Plaintiff failed to cure his breach.

[4] LSAC cites to both California and Pennsylvania law herein as these are two states' laws which arguably could apply to the Licensing Agreement. LSAC's citation is

MORGAN, LEWIS & BOCKIUS LLP ATTORNEYS AT LAW LOS ANGELES

1    Importantly, a ruling in this case would *not* resolve the core issues of the
2    Pennsylvania Action, that is (1) whether Mr. Tatro is liable for copyright
3    infringement *after* termination of the License Agreement, and (2) whether Mr.
4    Tatro is liable for copyright infringement for uses of LSAC's materials that were
5    contrary to the terms of the Licensing Agreement while it was in effect.  Further,
6    this Court will not reach issues of copyright infringement, willfulness, and damages
7    – all issues which will be adjudicated in the Pennsylvania Action.

8         Where, as here, the later-filed action is broader and encompasses more issues
9    of dispute between the parties than the sole issue raised in the first-filed action, this
10   factor weighs heavily in favor of dismissal of the first-filed narrower action.  *See*
11   *Lateena Girls, LLC v. Latina Media Ventures, LLC*, No. SA-06-CA-217-RF, 2006
12   WL 2547884, at *6 (W.D. Tex. Aug. 9, 2006) ("[T]he better alternative is to allow
13   the broader relief action to proceed, since it certainly would address the relief
14   sought, rather than the restricted declaratory judgment action."); *see also Budget*
15   *Rent A Car Corp. v. Miljack, Inc.*, 760 F. Supp. 135, 137 (N.D. Ill. 1991)
16   (exercising discretion to not entertain first-filed action where later-filed action
17   encompassed more issues); *Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204,
18   1208 (E.D. Mo. 1985) (same).

19        Finally, the convenience of remedies weighs in favor of dismissal of the
20   instant action.[5]  The Pennsylvania Action is progressing at a faster pace than this
21   case.  The close of fact discovery in the Pennsylvania Action is set for February 5,

22   not an admission that one of these states' law applies to the parties' agreement, and
23   LSAC reserves its right to later assert that the law of one of these jurisdictions does
24   not govern the parties' agreement.

25   [5] The convenience of the parties is a neutral consideration for this Court.  Litigating
     in California is as equally inconvenient for LSAC – a Pennsylvania resident – as
26   litigating in Pennsylvania is for Mr. Tatro – a California resident.  *See Kinetic*, 2004
27   WL 2026812, at *4 ("Despite Plaintiff's contentions as to the burden that would be
     placed on it in California, it appears to the Court that the Texas forum would be just
28   as burdensome to Defendant as the California forum would be to Plaintiff.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2016, whereas the initial pretrial conference in this case will not occur until January 25, 2016. *See* Scheduling Order, Pennsylvania Action, D.I. 13 (attached as Ex. 3 to the Gorman Decl.). Thus, the Pennsylvania Action will likely resolve more expeditiously than the instant action, and provide a more convenient forum with respect to speed of relief.

### 3. The First-Filed Doctrine Is Inapplicable to This Anticipatory Lawsuit.

The first-filed doctrine, wherein a court normally gives deference to a first-in-time filed action over a later-filed action, should not impact this Court's discretion to decline jurisdiction over the instant action. That doctrine is inapplicable here where the first-in-time filed action was nothing more than an effort by a party (such as Mr. Tatro) to use the filing of a declaratory judgment action as a tactical device to deprive the real plaintiff in interest (such as LSAC) of its choice of forum. *See Xoxide*, 448 F. Supp. 2d at 1192 ("The Court may, in its discretion, rely on equitable grounds, such as 'when the filing of the first suit evidences bad faith, ***anticipatory suit, or forum shopping***,' to determine whether to depart from the first to file rule.") (emphasis in original). Indeed, the "filing of a declaratory judgment action is a red flag that there may be compelling circumstances to depart from the first-to-file rule." *See Inherent.com v. Martindale-Hubbell, Lexis/Nexis, Inc.*, 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006) (citation and internal quotation marks omitted). Where, as here, the two lawsuits are filed close in time and one is filed in anticipation of the other, any deference normally accorded to the first-filed action is eliminated. *See Oliver & Tater Enters., Inc. v. Foundations Worldwide, Inc.*, No. CV 13-01683-RGK, 2013 WL 4446827, at *4 (C.D. Cal. June 18, 2013) (Klausner, J.) ("The facts support a finding that, while Defendants were claiming to pursue a non-legal resolution, they were preparing an anticipatory filing. Circumstances here weigh against the discretionary application of the first-to-file rule, and the Court declines its

application.").

## B.    The Court Should Dismiss This Action Because Plaintiff Has Not Stated a Cognizable Claim For Relief.

### 1.    The Court May Dismiss Plaintiff's Claim Based on Plain and Unambiguous Language of the Licensing Agreement.

"A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D. Cal. 2012). Indeed, "courts have granted motions to dismiss on contract claims where it is clear from the unambiguous terms of the contract that the alleged conduct by the defendant does not constitute a breach of contract." *Mieuli v. DeBartolo*, No. C-00-3225-JCS, 2001 WL 777447, at *5 (N.D. Cal. Jan. 16, 2001); *see Campbell v. Allstate Ins. Co.*, No. 97-9426-CMB, 1998 WL 657488, at *1 (C.D. Cal. Aug. 6, 1988) (dismissing breach of contract claim on basis that the defendant's acts were consistent with the plain language of the contract and therefore did not breach the contract). "Contract interpretation is a question of law." *Mendler v. Winterland Production, Ltd.*, 207 F.3d 1119, 1121 (9th Cir. 2000).

### 2.    Plaintiff's Allegations Regarding Purported Breach Fail as a Matter of Law.

In the Amended Complaint, Plaintiff asserts a single claim for relief seeking a declaration that LSAC did not properly terminate the parties' Licensing Agreement because it failed to provide 30 days notice prior to terminating the agreement. *See* FAC.[6] Plaintiff's claim is premised on the incorrect conclusion

---

[6] At paragraph 13 of the FAC, Plaintiff alleges that "the provision relied on by Defendant is procedurally and substantively oppressive and unconscionable and thus unenforceable." *See* FAC ¶ 13. This allegation is not in accord with this Court's November 19 Order. As the Court will recall, Plaintiff's Original Complaint sought a judicial declaration that, *inter alia*, the Licensing Agreement contains unenforceable terms. *See* Original Complaint, D.I. 1, Ex. 1 (Gorman Decl., Ex. 1) ¶¶ 26(b), 28 & p. 7, ¶ C. LSAC moved to dismiss, *inter alia*, this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

that the Licensing Agreement provides Mr. Tatro with a right to notice before termination. However, this conclusion disregards the plain language of the agreement, and is based on a mistaken interpretation that presumes a conflict between provisions and that does not give effect to the entire contract. Under well-established contract interpretation principles, this Court should find that the contract unambiguously provides Plaintiff with *no* notice right, and should dismiss his claim for relief.[7]

The parties' Licensing Agreement expressly and unambiguously provides that LSAC need not provide any notice before ending the license. Indeed, it states that "LSAC may terminate this license at its sole discretion at any time and for any reason." *See* Ex. A ¶ 2. This is reason alone for dismissal of Plaintiff's claim. Plaintiff tries to overcome this clear contractual provision by alleging that it "conflicts" with a provision of LSAC's Licensing Policy stating that "LSAC may terminate any license in the event that a licensee violates a material term or condition of the license, which is not cured by the licensee within 30 days after receipt of written notice of such violation by LSAC." FAC ¶ 10; Ex. B at 4, ¶ 5.

---

count because the Plaintiff failed to plead any facts – let alone facts giving rise to a plausible inference – supporting the allegation of unenforceability. *See* D.I. 15-1 § IV.C. The Court granted LSAC's motion to dismiss, and granted Plaintiff leave to amend only with respect to "Plaintiff's claim for breach of the Licensing Agreement." *See* D.I. 27 at 7-8. The Court did not allow Plaintiff leave to amend with respect to his allegations that the Licensing Agreement contains unenforceable terms. As such, Plaintiff's allegation with respect to the enforceability of the License Agreement should be struck because it violates the Court's November 19 Order and for all the reasons originally stated in LSAC's Original Motion to Dismiss.

[7] Without conceding the applicability of California law to any of Plaintiff's claims or any of the purported contracts at issue, LSAC cites to California law herein because Pennsylvania and California law are in accord in relevant part. *See Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 921 (9th Cir. 1999) ("If there is no true conflict, then the forum is entitled to apply its own law.") (internal quotation marks omitted).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

But plaintiff is mistaken, because there is no actual conflict between these provisions.

"In construing a contract, a Court is required to construe the contract as a whole, and the language of any apparently inconsistent or contradictory provisions must be interpreted, if reasonably possible, in a way that harmonizes those provisions and gives effect to the entire contract, and not in a way that renders a provision irrelevant, inoperative or meaningless. *See* West's Ann. Cal. Civ. Code § 1641; *Logan v. Union Sec. Ins. Co.*, No. CV 14–1174 DMG, 2015 WL 3745047, at \*11 (C.D. Cal. Mar. 31, 2015). Here, the explicit language of the Licensing Policy itself provides the basis for harmonizing these provisions. Specifically, the Licensing Policy makes clear that, with respect to the term of the agreement, the language of the Licensing Agreement supersedes any differing language in the Licensing Policy. *See* Ex. B at 1, ¶ 1 ("Term of Agreement: ***Unless otherwise specified in the licensing agreement***, all new licenses and license renewals begin on July 1 of the initial year and expire on June 30 of the second year." (emphasis added)). Thus, because the negotiated Licensing Agreement specifies that the license term ends either on June 30, 2017 or "at [LSAC's] sole discretion at any time and for any reason," such a provision trumps any "conflicting" term provisions of the Licensing Policy, including any purported 30-day notice provision.

Plaintiff's interpretation of the parties' agreement is untenable because it puts a provision of the License Agreement in direct conflict with a provision of the Licensing Policy, forcing one or the other to be superfluous. This reading fails to harmonize the two provisions in violation of well-established contract interpretation principles. *See Logan*, 2015 WL 3745047, at \*11.

Accordingly, because the plain language of the Licensing Agreement and Licensing Policy referenced therein indicates that Licensing Agreement conditions on term supersede those of the Licensing Policy, Plaintiff had no notice right under the Licensing Agreement, and its claim for declaratory relief fails as a matter of

law.

### C. Alternatively, the Court Should Transfer the Instant Action to the Eastern District of Pennsylvania.

As discussed previously, the Court should dismiss this case. However, to the extent the Court is inclined to permit the instant action to survive a motion to dismiss, the action should be transferred to the Eastern District of Pennsylvania.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) gives courts broad discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Transfer must be for the convenience of the parties and witnesses and in the interests of justice. *See* 28 U.S.C. 1404. Courts within the Ninth Circuit balance various considerations that can be used in weighing these factors: (1) Plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Kierstead v. Experian Info. Solution, Inc.*, No. SACV-10-1694, 2011 WL 1375361, at *2 (C.D. Cal. Apr. 11, 2011); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Weighing these factors demonstrates that transfer of this case to the Eastern District of Pennsylvania is appropriate.

### 1. The Instant Action Could Have Been Brought In Pennsylvania.

The Eastern District of Pennsylvania is a venue in which the instant action could have been brought. It is home to LSAC and where a large portion of events giving rise to the instant action – including negotiation of the Licensing Agreement

– took place.

## 2. The Convenience Factors Weigh In Favor of Transfer.

### a. Plaintiff's Choice of Forum Is Entitled to Little Weight.

Plaintiff's choice of forum is entitled to little weight where, as here, the Plaintiff has filed a declaratory judgment action in an effort to forum shop in order to avoid having to litigate in another forum where another party had stated its intention to file a lawsuit. *See Int'l Bhd. of Teamsters v. N. Am. Airlines*, No. C05-0126, 2005 WL 947083, at *3 (N.D. Cal. Apr. 20, 2005) ("[L]ittle deference given to plaintiff's choice of forum in cases of anticipatory suits and forum shopping.") (citation omitted).

### b. The Convenience of Parties Factor Is Neutral.

The Eastern District of Pennsylvania is a more convenient forum for LSAC to litigate this dispute, and keeping the instant case in the Central District of California is inconvenient for, and imposes a financial burden and hardship upon, LSAC. Plaintiff would presumably prefer to litigate in this District, and will likely contend that he will suffer hardship if forced to litigate in the Eastern District of Pennsylvania. Accordingly, this factor is neutral.

### c. The Convenience of Witnesses Factor Weighs In Favor of Transfer.

In balancing the convenience of witnesses, the "convenience of non-party witnesses is more important factor than the convenience of party witnesses." *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (internal quotation marks omitted). Here, the vast majority of witnesses likely to have information pertinent to the instant case are current or former employees of LSAC located in Pennsylvania who had dealings with Mr. Tatro during the license negotiations. By contrast, Plaintiff operates a "sole proprietorship" (FAC ¶ 1), and, thus, he would be the sole witness located in California. Accordingly, because all

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

likely witnesses except for Plaintiff are located in the Pennsylvania area, this factor weighs in favor of transfer. *Metz*, 674 F. Supp. 2d at 1148 (finding this factor weighed in favor of transfer where defendant's witnesses were located out of state and comprised the majority of witnesses who would testify regarding contract negations); *see also Szegedy v. Keystone Food Prods.*, No. CV 08-5369-CAS, 2009 WL 2767683, at *3-4 (C.D. Cal. Aug. 26, 2009) (concluding same).

### d. Ease of Access to Evidence Is a Neutral Factor.

The ease of access to evidence factor is neutral in light of the fact that the parties can each produce digital copies of their evidence. *See May v. Haas*, No. 2:12-cv-01791, 2013 WL 4010293, at *7 (E.D. Cal. Aug. 5, 2013) ("[E]ase of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.") (internal quotation marks omitted).

### 3. The Interest of Justice Factors Weigh In Favor of Transfer.[8]

### a. Court's Familiarity With Governing Law Is Neutral.

This case involves issues of contract interpretation. Whether California or Pennsylvania law applies to those issues, this Court and the Pennsylvania Court are equally capable of applying the appropriate governing law. *See Burke v. USF Reddaway, Inc.*, No. 2:12-cv-02641, 2013 WL 85428, at *5 (E.D. Cal. Jan. 8, 2013). Accordingly, this factor is neutral.

---

[8] Although not expressly included as a sub-factor, in evaluating the interests of justice, the fact that the instant action was anticipatorily filed to win a race to the courthouse to ensure Plaintiff of its choice of forum demonstrates that the interests of justice weigh heavily in favor of transfer. *See Gerin v. Aegon USA, Inc.*, No. C 06-5407-CBA, 2007 WL 1033472, at *8 (N.D. Cal. Apr. 4, 2007) ("The interests of justice strongly weigh in favor of granting the motion to transfer in order to discourage forum-shopping.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

### b. Feasibility of Consolidation With Other Claims Favors Transfer.

"The feasibility of consolidation is a significant factor in a transfer decision, and the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *Cardoza v. T–Mobile USA Inc.*, No. 08-5120-SC, 2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009). To the extent the claim pending in the instant action is not dismissed, it can easily be consolidated with the copyright infringement claim that is proceeding at a faster pace in Pennsylvania.

### c. Local Interest In the Controversy Is Neutral.

Pennsylvania and California each have interests in protecting their residents and enforcing their contractual rights. Accordingly, this factor is neutral.

### d. Relative Court Congestion Weighs In Favor of Transfer.

The Pennsylvania Action is farther along than the instant action. In the Pennsylvania Action, the Court already held a Rule 16 conference in November 2015, discovery is underway, and fact discovery is set to close on February 5, 2016. *See* Pennsylvania Action, D.I. 13 (Gorman Decl., Ex. 3). In the instant action, the Court will not even hear argument on the instant Motion or convene an initial pretrial conference until January 25, 2015 – just 11 days before the close of fact discovery in the Pennsylvania Action. *See* D.I. 16. As such, transfer of this case would likely result in a faster adjudication of the parties' disputes.

Moreover, a study of U.S. District Courts across the United States during the 12-month period ending March 31, 2014 demonstrates that the median time to trial in the Eastern District of Pennsylvania is 16.7 months, whereas the median time to trial in the Central District of California is 21.4 months. *See* Tab C-5, U.S. District Court – Median Time Intervals from Filing to Disposition of Civil Cases

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

Terminates, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2014, available at www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2014/03/31 (attached hereto as Ex. C). Accordingly, because the court congestion is less in the Eastern District of Pennsylvania when compared to the Central District of California, this factor weighs in favor of transfer.

## IV.    CONCLUSION

For the reasons set forth herein, LSAC respectfully requests that the Court exercise its discretion to dismiss the Amended Complaint with prejudice in favor of the pending Pennsylvania Action or for failure to state a claim. Alternatively, LSAC requests that the Court transfer the instant action to the Eastern District of Pennsylvania.

                                   Respectfully submitted,

DATED:  December 17, 2015          MORGAN, LEWIS & BOCKIUS LLP

                                   */s/ John V. Gorman*
                                   Monique E. Cho
                                   John V. Gorman
                                   Anita Polott

                                   ***Attorneys for Defendant Law School Admission Council, Inc.***

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

# **PROOF OF SERVICE**

I, John V. Gorman, hereby declare that on December 17, 2015, I filed the foregoing Defendant Law School Admission Council, Inc.'s Motion to Dismiss via the Court's CM/ECF System whereby a notice of filing was sent via email to the following:

René P. Tatro
Steven R. Tekosky
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, CA 90071
Telephone: (213) 225-7171
Facsimile: (213) 225-7151
renetatro@ttsmlaw.com
stevetekosky@ttsmlaw.com

***Attorneys for Plaintiff Morley Cambridge Tatro***

*/s/ John V. Gorman*
John V. Gorman

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

2:15-cv-07627-RGK-JEM
MEMO. ISO MOTION TO DISMISS

# Exhibit A



Law School Admission Council
662 Penn Street Newtown, PA 18940-0040
P: 215.968.1162 • F: 215.968.1169

**LEGAL AFFAIRS–LICENSING**

## LICENSE AGREEMENT

This agreement between Law School Admission Council, Inc., Box 40, Newtown, PA 18940 (LSAC) and Cambridge LSAT, 225 W. Verdugo Avenue, Apt 302, Burbank, CA 91502 (Licensee), dated January 1, 2015 is a nonexclusive grant, from LSAC to Licensee, of permission to copy the LSAT-related information described in paragraph 1 below. This license is subject to LSAC's LSAT-Question Licensing Policy and the following terms and conditions:

1. Materials Subject to this License Agreement ("Licensed Questions")

     LSAC grants Licensee the nonexclusive right to use, print, reproduce, and distribute the following PrepTest material, estimated number of copies 2,000:

     | | |
     |---|---|
     | PrepTests 60 – current | $6 per test, per copy |
     | PrepTests 46 – 59 | $5 per test, per copy |
     | PrepTests 32 - 45 | $4 per test, per copy |
     | PrepTests 17 - 31 | $3 per test, per copy |
     | *PrepTests 1 – 16 | $2 per test, per copy |
     | SuperPrep (February tests from 1996, 1999, and 2000) | $3 per test, per copy, |

     *LSAC will allow Licensee to use PrepTests 1-16 for the last time as part of this* *agreement. PrepTests 1-16 will no longer be available for licensing after June 30, 2017.*

2. Term and Termination

     This license expires June 30, 2017, but may be renewed at the option of LSAC if the licensed questions are still published by LSAC. Any violation of any term or condition of this license voids the license. In addition, LSAC may terminate this license at its sole discretion at any time and for any reason.

3. Fees and Periodic Accounting
     *(Mail to: Felicia Williams, LSAC-Licensing, 662 Penn Street, Newtown PA 18940.)*

     Upon execution of this agreement, Licensee shall pay an initial fee of $250, which goes toward the first year's licensing fees. Licensee agrees to provide an accounting of the number of licensed questions actually used, and the number of copies of each question actually made, on January 1, 2016; January 1, 2017; and June 30, 2017. Should Licensee exceed the number of copies permitted by this license, Licensee agrees to pay an additional fee, calculated according to the fee structure then in place, within 30 days of the due date. Failure to pay any such additional fee will void this entire license.

4. Use Requirements and Limitations

     A. Licensee agrees to reproduce the licensed questions (including the question itself and its stem), test instructions, and any test-related information subject to the license verbatim, without modification or editing.



1

B. Licensee agrees that all licensed questions within licensee's work will be clearly identified as such, and licensee's work containing licensed questions will include, in a conspicuous place, the following statement: *"All actual LSAT questions printed within this work are used with the permission of Law School Admission Council, Inc., Box 40, Newtown, PA 18940, the copyright owner. LSAC does not review or endorse specific test preparation material or services, and inclusion of licensed LSAT questions within this work does not imply the review or endorsement of LSAC. LSAT is a registered trademark of LSAC."*

C. Licensee will offer LSAT content in a self-study course, which will include a study outline, section introductions, tracking software, and book recommendations, to LSAT course students. The tracking software assesses performance, diagnoses weaknesses, and suggests targeted practice for improvement. Each student will have access to purchase the full range of materials offered by Licensee.

D. Licensee may make only descriptive reference to the LSAT and LAW SCHOOL ADMISSION TEST trademarks ("LSAT Trademarks") in a manner consistent with paragraph 4.B. herein. Except as otherwise provided in the Agreement, Licensee shall not use the LSAT Trademarks, or any formatives thereof, in any manner that states, suggests or implies that LSAC endorses, sponsors, or is otherwise affiliated with Licensee or Licensee's products and services. Licensee agrees not to challenge, directly or indirectly, LSAC's exclusive ownership or the validity of the LSAT Trademarks or the copyright in the licensed questions, and shall not attempt, directly or indirectly, to use, register or assert ownership in any LSAT Trademarks, or any confusingly similar variations thereof, as a trade/service mark, corporate name, domain name or other indicia of source anywhere in the world. The obligations of this paragraph shall survive termination or expiration of this Agreement.

E. Licensee may not make licensed materials available to the general public by any means (hard copy and/or electronic medium).

F. Licensee agrees not to state or imply the endorsement of its products or services by Law School Admission Council (LSAC).

G. Licensee agrees not to construct a sample LSAT, with or without a score conversion table, from licensed questions drawn from different LSAT forms. Should Licensee wish to produce a sample LSAT, it must use a license for an intact LSAT form, or purchase printed tests from LSAC.

H. Cover or title pages used with licensed LSAT material may not mimic LSAC's branded cover designs or trademarked PrepTest titles. LSAC's PrepTest titles and numbers may be used solely to describe the content of the published material, and not as a prominent part of a licensee's titles. The titles of licensees' published material must clearly show that they are published by the licensee and not by LSAC.

5. <u>Security Methods</u>

Cambridge LSAT (www.cambridgelsat.com) provides limited download access to all available LSAT exams in various forms. Course students can select, purchase, and download materials consisting of actual full-length PrepTests, grouped questions/games/passages, or both. Each individual download has an expiration of 72 hours (3 full days) or 3 clicks/views, whichever comes first. Once the PDF has been downloaded, each page will be stamped with the purchaser's name, email address, and a unique transaction ID. The files are secured against text extraction and editing.

Licensee will employ a method called "character cloaking," whereby the visible/printable text will not match the extracted text. The file is encrypted and secured to prevent modification and/or text extraction.

All displayed LSAC content will show a watermark or otherwise visually indicate the name of the product or company licensing the materials.

6. Marketing, Publication, Sample Copies

Licensee will offer printed copies of its publications, as well as eBooks, according to demand.

- Full-length PrepTests (A, B, C, and 1-74), 5-Section PrepTests (recent tests with an added section), and 6-Section PrepTests (recent tests with two added sections)
- Individual sections from all available tests
- Question (LR) groupings from tests 1-38 as well as a bundle with all these groupings
- Game (AR) groupings from tests 1-38 as well as a bundle with all these groupings
- Passage (RC) groupings from tests 1-38 as well as a bundle with all these groupings
- Books with targeted drilling material from various test ranges (1-20, 21-40, 41-60, 41-50, 51-60, 61-70, etc.)
- Full explanations, both for complete tests and for individual sections

Licensee agrees to provide LSAC with the name and address of its printer within ten days of the execution of this agreement. Licensee will forward a copy of the license agreement to its printer.

Licensee further agrees to provide LSAC with a sample of any of its LSAT-related materials, whether or not those materials contain licensed questions, as well as a sample of any advertisements or marketing materials for their products or services, with or before the first accounting report.

7. Cloning

Licensee is not permitted under the terms of LSAC's License Agreement to use licensed material to create modified versions of actual LSAT questions and publish them either as a supplement to, or as a substitute for, licensed questions. This practice of taking LSAT questions and modifying the names or context for the LSAT material is sometimes known as "cloning" and is prohibited under the License Agreement and US copyright law.

8. Use of LSAC Trademarks in Product Names and Web Addresses

Licensee acknowledges that LSAC must approve of any use of the registered trademark "LSAT" and/or other LSAC trademarks in any of Licensee's product names and related URLs. Such approval will be granted separately from this Agreement.

9. Assignment

Licensee may not assign this license to any other person, company, or organization without the express prior written consent of LSAC.

10. Auxiliary Information

In an effort to increase candidate awareness of LSAC's day-of-test rules and its misconduct and irregularities process, Licensee agrees to provide information on those topics supplied by LSAC to its clients. Licensee further agrees to provide a link from its website to LSAC's information on these topics, as provided by LSAC.

08-31-2015

11. Notice of Third Party Claims

Licensee agrees to notify LSAC immediately of any third-party claims related to the copyright of licensed questions.

12. Audit

LSAC, either directly or through its auditing firm, shall have the right to inspect Licensee's records and accounts for the purpose of auditing the accountings and license-fee payments required under this Agreement. Such inspection shall be at LSAC's own expense, and shall occur during regular business hours on mutually agreed upon dates and times. LSAC shall provide Licensee with at least seven days' notice of its intent to exercise this right.

**FOR LSAC:**                                        **FOR LICENSEE:**

| | |
|---|---|
| *Joan E Van Tol* | |
| Signature | Signature |
| Joan E. Van Tol | |
| Name | Name |
| General Counsel | |
| Title | Title |
| 3/16/15 | |
| Date | Date |

08/31/2015

# Exhibit B



## LAW SCHOOL ADMISSION COUNCIL
## LSAT-QUESTION LICENSING POLICY

The Law School Admission Council (LSAC) is the sole owner of the Law School Admission Test® (LSAT®), and all LSAT materials are protected by U.S. and international copyright laws and may be reproduced only under a license from LSAC. Licenses to reproduce LSAT questions and other LSAT materials are available under the following terms and conditions (Licensing Policy), and at the sole discretion of LSAC.

Any suspicion or evidence of unauthorized use by unlicensed entities should be reported to LSAC immediately. LSAC pursues every report of unauthorized use of its content.

LSAC reserves the right to not grant a license for any reason within its sole discretion it deems sufficient.

**Questions Available for Licensing**

LSAT questions are available for licensing as complete, previously administered test forms and as individual questions. (See complete listing under Licensing Fees, below).

Because test specifications and quality-control measures change over time, only those LSAT questions and forms that reflect the current structure of the LSAT are available to licensees. Test questions that appeared on LSAT forms before June 1991 and nondisclosed questions are not available for licensing.

**Term of Agreement**

Unless otherwise specified in the licensing agreement, all new licenses and license renewals begin on July 1 of the initial year and expire on June 30 of the second year.

**License Requirements**

1. As part of their licensing proposal, potential licensees must identify the test questions they wish to reproduce and the number of copies of each question they intend to make. Licensees must also provide a detailed explanation about precisely how licensed LSAT content will be used.

2. If an entity other than the person or company requesting a license will be acknowledged as a publisher or copyright holder of materials to be covered by an LSAC licensing agreement, that entity must be disclosed to LSAC prior to the execution of the agreement.

3. Licensees must use verbatim, without modification or editing, all licensed questions (including the question itself and its stem), test instructions, and any test-related information subject to the license.

4. All licensed questions within a licensee's work must be clearly identified as such, and a work containing licensed questions must include, in a conspicuous place, the following statement: *"All actual LSAT questions reproduced within this work are used with the permission of Law School Admission Council, Inc., Box 2000, Newtown, PA 18940, the copyright owner. LSAC does not review or endorse specific test preparation materials, companies, or services, and inclusion of licensed LSAT questions within this work does not imply the review or endorsement of LSAC."*



Revised June 4, 2015

1

5. Covers or title pages used with licensed LSAT material may not mimic LSAC's branded cover designs or trademarked PrepTest titles. LSAC's PrepTest titles and numbers may be used solely to describe the content of the published material, and not as a prominent part of a licensee's titles. The titles of licensees' published material must clearly show that they are published by the licensee and not by LSAC.

6. If a licensee should offer a complete, intact LSAT form to the general public, that form must be accompanied by instructional or explanatory content developed and added by the licensee. Under no circumstances is it permissible to offer LSAT forms for sale to the general public without such additional material.

7. *Licensing LSAT Content for Online Use*

LSAC will license the use of LSAT content for online distribution (including, but not limited to, ebooks, videos, web pages) according to the terms outlined in this document and in individual licensing agreements.

   a. *Online Security Requirements*

   Security requirements may vary depending on how the content will be used. In all cases, content licensed from LSAC shall be maintained in a secure environment, pursuant to commercially reasonable industry practices for the housing and storage of digital information, so that the licensed material is secure from manipulation, unauthorized copying or transmission, infringement, and other misappropriation or misuse. LSAC may require licensees and potential licensees to demonstrate the methods that will be used to protect LSAC's content. A security protocol must be specified in all licensing proposals involving the use of LSAC's content online and will be included in all licensing agreements for this use. The licensee must notify LSAC of any changes to that protocol so that LSAC can review and approve those changes prior to their implementation.

   The burden of protecting LSAC's licensed content shall fall upon the licensee; if LSAC should become aware of instances where its content is not being adequately protected, LSAC reserves the right to void the license. These protections against unauthorized use of LSAC's content benefit both LSAC's and the licensees' investments in this content.

   LSAC requires that all displayed LSAC content show a watermark or otherwise visually indicate the name of the product or company licensing the materials.

      i. **For content that is being offered online solely to prep course registrants**

      As part of the licensing proposal, potential licensees must describe with reasonable technical specificity the manner in which files containing LSAC licensed content will be stored and distributed, and all security measures to be used to protect the licensed material, including, but not limited to, encryption, password-protection, etc. It is recommended that licensees use digital rights management (DRM) to provide the protections and limitations detailed above. The type of DRM to be used by the licensee, along with the extent of its capabilities, must be included in the proposal. If the licensee proposes to use security measures other than DRM, the proposal must specify how the licensee will otherwise control access, unauthorized viewing, screen capturing, copying, printing, sharing, and altering of LSAC's licensed content. In addition, the licensee must specify the timeframe for access that will be allowed for each customer and detail steps that will be taken should unauthorized use occur.

      Use of any DRM format is subject to the terms and conditions of any applicable license agreement between the licensee and the supplier of the applicable DRM format.

ii. **For content to be distributed online for sale to the public (including, but not limited to, ebooks, videos, web pages)**

As part of the licensing proposal, potential licensees must describe with reasonable technical specificity the manner in which files containing LSAC licensed content will be stored and distributed, and all security measures that will be used to protect the licensed material. LSAC requires licensees who intend to offer LSAT preparation material via the internet to the general public to employ digital rights management (DRM) that does not employ the use of JavaScript and will:

- control usage,
- prevent copying, and cutting and pasting,
- prevent emailing, forwarding, sharing, unauthorized access and unauthorized distribution,
- limit printing to one time,
- allow the document to open only on one device,
- prevent screen capturing,
- control and instantly revoke access if a violation occurs,
- identify abusers,
- expire access after a mutually agreed upon timeframe and/or number of views, and
- maintain a complete audit trail of how, when, and where LSAC's material is being used.

Although LSAC does not endorse a specific DRM program, the following are examples of programs that perform the functions listed above and should offer adequate security:

- http://www.drm-x.com/DRM-X3.0-Features.aspx
- http://www.locklizard.com/index.htm
- http://www.artistscope.com/digital_rights_management.asp

Use of any DRM format is subject to the terms and conditions of any applicable license agreement between the licensee and the supplier of the applicable DRM format.

8. Licensees must provide LSAC with the name and address of their printer(s).

9. Licensees must provide LSAC with a print, digital, or video sample of any products containing licensed questions as well as a sample of any advertisements or marketing materials for their products or services. These samples must be provided along with or prior to the first licensing accounting, as specified on the licensing agreement.

**License Restrictions**

1. All licenses granted pursuant to this policy are nonexclusive.

2. Licensees may not state or imply endorsement of their products or services by Law School Admission Council (LSAC).

3. No licensee may construct a sample LSAT, with or without a score-conversion table, from licensed questions drawn from different LSAT forms. Licensees wishing to produce a sample LSAT must obtain and use a license for an intact LSAT form, or purchase printed tests from LSAC.

4. Licenses may be renewed at LSAC's discretion if the licensed questions are still published by LSAC.

5. LSAC may terminate any license in the event that a licensee violates a material term or condition of the license, which is not cured by the licensee within 30 days after receipt of written notice of such violation from LSAC.

6. Licensees may not assign a license to any other person, company, or organization without the express prior written consent of LSAC.

7. Licensees may not create modified versions of actual LSAT test questions and publish them either as a supplement to, or as a substitute for, licensed questions. This practice of taking LSAT questions and modifying the names or context for the LSAT material is sometimes known as "cloning" and is prohibited under LSAC's licensing policy and U.S. copyright law.

8. Publication of licensed content on the Web or through other electronic means without the prior approval of LSAC is prohibited. Licenses that do not specify a grant of electronic publication rights do not include such rights. LSAC will determine whether to allow electronic publication of licensed content on a case-by-case basis, paying particular attention to the steps that a licensee has taken to safeguard those materials from unauthorized reproduction and distribution.

**Licensing Fees**

These licensing fees apply to all licensed content to be used in any medium. A "copy" is defined as a printed book, an accessed ebook, an online document or video accessed throughout the term of a course by a course registrant, an individual view of a video if offered to the general public, or any other single reproduction of licensed content, whether or not that reproduction method is specified herein.

1. *Calculating License Fees for Entire Test Form*

   The following PrepTests are available for licensing as entire forms at these rates:

   | | |
   |---|---|
   | PrepTests 60 – current | $6 per test, per copy |
   | PrepTests 46 – 59 | $5 per test, per copy |
   | PrepTests 32 - 45 | $4 per test, per copy |
   | PrepTests 17 - 31 | $3 per test, per copy |
   | PrepTests 1-16 | $2 per test, per copy |
   | Form 96, unreleased | $10 per test, per copy |
   | February tests from 1996, 1999, and 2000 | $3 per test, per copy |

   The fee for licensee reproduction of writing-sample prompts is 2 cents per copy.

   There is no fee for licensee copying of test instructions.

2. *Calculating License Fees for Individual Test Questions*

   The license fee is determined by the number of copies of each question the licensee will make and the per-question cost. The per-question cost is determined by dividing the relevant per-test fee by 100. For example, a licensee wishing to make 100 copies of 50 questions from PrepTest 40 must pay a license fee of $200 ($4 divided by 100 = .04, multiplied by 100 copies, then multiplied by 50 questions).

Licenses are granted only for a specific number of questions and copies, and only after payment of the initial license fee (as specified on the licensing agreement). Licensees must provide an annual accounting of which PrepTest(s) was used, the number of licensed questions used, and the number of copies of each form or question actually made. For print reproduction, the licensing fees are based on the print run, not actual sales. For printed books that are updated frequently, LSAC may make payment adjustments for unsold copies upon proof that the unsold copies have been destroyed and cannot be resold.

Revised June 4, 2015

4

## Trademarks and Domain Names

"LAW SCHOOL ADMISSION TEST" and "LSAT" are registered trademarks of LSAC (LSAT Trademarks). Licensees may only make descriptive references to the LSAT Trademarks in a manner that is consistent with the required statement that is set forth on page 1 of this Licensing Policy. Licensees may not use the LSAT Trademarks, or any formatives thereof, in any manner that states, suggests or implies that LSAC endorses, sponsors or is otherwise affiliated with the licensee or licensee's products or services. Licensees must agree not challenge, directly or indirectly, LSAC's exclusive ownership or the validity of the LSAT Trademarks or the copyright in the licensed questions, and not to register or assert ownership in any LSAT Trademarks, or any confusingly similar variations thereof.  In addition, licensees may not use the LSAT Trademarks or any other LSAC trademarks in product or domain names without the prior written consent of LSAC, which LSAC may withhold in its sole discretion.

## Auxiliary Information

In an effort to increase candidate awareness of LSAC's day-of-test rules and its misconduct and irregularities process, licensees are required to provide information on those topics supplied by LSAC to their clients. LSAC also requires that licensees provide a link from their website to LSAC's information on these topics, http://www.lsac.org/JD/apply/misconduct-and-irregularities.asp as provided by LSAC.

Revised June 4, 2015

# **Exhibit C**

**Table C-5.**
**U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases**
**Terminated, by District and Method of Disposition,**
**During the 12-Month Period Ending March 31, 2014**

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **TOTAL** | **199,787** | **8.6** | **43,141** | **5.0** | **127,635** | **8.6** | **26,306** | **12.7** | **2,705** | **24.4** |
| **DC** | **1,748** | **7.9** | **818** | **5.4** | **886** | **9.8** | **9** | **-** | **35** | **31.0** |
| **1ST** | **6,311** | **12.8** | **1,127** | **3.6** | **3,684** | **15.5** | **1,404** | **14.8** | **96** | **27.3** |
| ME | 356 | 7.9 | 151 | 5.5 | 188 | 9.3 | 11 | 14.5 | 6 | - |
| MA | 2,563 | 9.0 | 638 | 2.6 | 772 | 7.5 | 1,099 | 14.4 | 54 | 27.6 |
| NH | 471 | 8.6 | 75 | 2.9 | 208 | 6.7 | 181 | 15.1 | 7 | - |
| RI | 1,988 | 36.8 | 97 | 8.6 | 1,840 | 38.4 | 37 | 19.5 | 14 | 33.1 |
| PR | 933 | 13.0 | 166 | 7.5 | 676 | 13.4 | 76 | 19.0 | 15 | 21.6 |
| **2ND** | **18,289** | **8.7** | **3,278** | **4.8** | **10,477** | **8.3** | **4,198** | **12.0** | **336** | **31.9** |
| CT | 1,734 | 9.7 | 700 | 6.2 | 672 | 10.0 | 318 | 17.3 | 44 | 34.5 |
| NY,N | 1,171 | 11.0 | 230 | 3.4 | 575 | 12.7 | 339 | 14.4 | 27 | 34.7 |
| NY,E | 5,601 | 8.6 | 1,220 | 5.6 | 3,121 | 8.2 | 1,163 | 11.9 | 97 | 30.9 |
| NY,S | 8,310 | 8.1 | 897 | 3.5 | 4,941 | 7.1 | 2,318 | 11.3 | 154 | 31.5 |
| NY,W | 1,262 | 9.4 | 204 | 3.6 | 994 | 10.8 | 55 | 29.8 | 9 | - |
| VT | 211 | 9.5 | 27 | 4.3 | 174 | 9.6 | 5 | - | 5 | - |
| **3RD** | **23,793** | **8.1** | **2,778** | **3.9** | **16,506** | **7.0** | **4,259** | **13.5** | **250** | **26.7** |
| DE | 1,759 | 7.7 | 680 | 5.0 | 928 | 9.0 | 116 | 13.6 | 35 | 31.4 |
| NJ | 6,766 | 7.5 | 400 | 3.0 | 3,605 | 4.1 | 2,714 | 16.6 | 47 | 36.8 |
| PA,E | 11,464 | 8.7 | 812 | 3.6 | 9,313 | 9.1 | 1,239 | 9.3 | 100 | 16.7 |
| PA,M | 1,596 | 8.1 | 412 | 5.0 | 1,054 | 8.7 | 100 | 16.0 | 30 | 26.7 |
| PA,W | 1,939 | 7.2 | 309 | 3.0 | 1,584 | 8.1 | 21 | 24.3 | 25 | 27.0 |
| VI | 269 | 15.6 | 165 | 13.1 | 22 | 20.0 | 69 | 18.1 | 13 | 45.9 |
| **4TH** | **12,561** | **7.6** | **2,179** | **6.0** | **8,857** | **7.4** | **1,343** | **9.9** | **182** | **20.1** |
| MD | 2,975 | 7.6 | 429 | 7.3 | 1,923 | 5.9 | 582 | 12.0 | 41 | 22.7 |
| NC,E | 1,226 | 8.5 | 332 | 8.0 | 887 | 8.6 | 3 | - | 4 | - |
| NC,M | 698 | 10.9 | 432 | 8.5 | 219 | 14.5 | 38 | 25.1 | 9 | - |
| NC,W | 868 | 9.1 | 222 | 6.7 | 545 | 9.1 | 88 | 12.1 | 13 | 24.3 |
| SC | 2,203 | 9.4 | 195 | 3.2 | 1,918 | 10.0 | 57 | 9.9 | 33 | 25.5 |
| VA,E | 2,203 | 5.5 | 331 | 4.3 | 1,311 | 4.5 | 508 | 7.3 | 53 | 11.9 |
| VA,W | 680 | 8.5 | 167 | 4.0 | 445 | 9.4 | 55 | 9.4 | 13 | 15.0 |
| WV,N | 378 | 9.0 | 50 | 4.4 | 320 | 9.4 | 3 | - | 5 | - |
| WV,S | 1,330 | 6.2 | 21 | 6.6 | 1,289 | 6.2 | 9 | - | 11 | 23.7 |

## Table C-5. (March 31, 2014—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **20,750** | **7.5** | **5,535** | **5.0** | **12,712** | **7.5** | **2,151** | **11.4** | **352** | **23.1** |
| LA,E | 3,728 | 4.9 | 112 | 1.8 | 2,493 | 4.7 | 1,057 | 10.4 | 66 | 20.5 |
| LA,M | 621 | 12.2 | 127 | 9.3 | 451 | 11.9 | 34 | 26.1 | 9 | - |
| LA,W | 1,133 | 11.5 | 408 | 7.5 | 654 | 12.8 | 44 | 21.1 | 27 | 30.8 |
| MS,N | 696 | 9.8 | 206 | 7.6 | 288 | 8.2 | 186 | 14.3 | 16 | 19.5 |
| MS,S | 1,454 | 9.7 | 805 | 6.6 | 585 | 11.0 | 38 | 19.8 | 26 | 26.4 |
| TX,N | 3,322 | 6.4 | 661 | 4.3 | 2,619 | 6.9 | 1 | - | 41 | 22.8 |
| TX,E | 2,956 | 9.1 | 830 | 5.0 | 2,015 | 10.0 | 58 | 19.0 | 53 | 26.1 |
| TX,S | 4,426 | 6.8 | 1,657 | 4.2 | 2,054 | 7.8 | 642 | 9.2 | 73 | 19.7 |
| TX,W | 2,414 | 6.9 | 729 | 5.6 | 1,553 | 6.8 | 91 | 15.3 | 41 | 21.6 |
| **6TH** | **15,991** | **9.2** | **4,921** | **5.7** | **7,227** | **8.8** | **3,642** | **12.5** | **201** | **26.8** |
| KY,E | 954 | 9.0 | 124 | 5.4 | 795 | 9.1 | 23 | 20.0 | 12 | 35.4 |
| KY,W | 1,030 | 8.2 | 172 | 5.5 | 804 | 8.2 | 43 | 16.8 | 11 | 27.2 |
| MI,E | 4,273 | 8.4 | 985 | 3.3 | 1,443 | 5.8 | 1,807 | 12.9 | 38 | 27.2 |
| MI,W | 998 | 8.3 | 184 | 2.2 | 515 | 8.0 | 288 | 12.3 | 11 | 29.8 |
| OH,N | 2,771 | 8.5 | 868 | 4.6 | 1,107 | 10.7 | 760 | 10.1 | 36 | 16.9 |
| OH,S | 2,277 | 9.6 | 1,036 | 6.0 | 602 | 11.8 | 609 | 12.6 | 30 | 29.4 |
| TN,E | 1,264 | 11.3 | 597 | 9.0 | 555 | 11.9 | 90 | 17.1 | 22 | 25.6 |
| TN,M | 1,432 | 11.9 | 341 | 24.4 | 1,057 | 9.8 | 7 | - | 27 | 28.0 |
| TN,W | 992 | 11.2 | 614 | 11.7 | 349 | 9.5 | 15 | 22.9 | 14 | 22.8 |
| **7TH** | **16,080** | **8.6** | **3,945** | **5.0** | **9,773** | **8.8** | **2,192** | **12.3** | **170** | **27.3** |
| IL,N | 8,154 | 6.8 | 2,189 | 5.1 | 5,294 | 7.0 | 578 | 11.1 | 93 | 31.2 |
| IL,C | 778 | 9.6 | 355 | 5.3 | 409 | 12.6 | 1 | - | 13 | 29.4 |
| IL,S | 2,133 | 18.7 | 527 | 16.8 | 1,586 | 19.2 | 4 | - | 16 | 19.0 |
| IN,N | 1,351 | 11.0 | 231 | 2.8 | 569 | 9.8 | 537 | 15.4 | 14 | 26.1 |
| IN,S | 1,957 | 8.9 | 263 | 3.7 | 875 | 7.4 | 805 | 11.6 | 14 | 27.1 |
| WI,E | 1,064 | 6.1 | 244 | 3.1 | 789 | 7.2 | 23 | 8.5 | 8 | - |
| WI,W | 643 | 7.5 | 136 | 3.1 | 251 | 6.0 | 244 | 11.1 | 12 | 15.2 |
| **8TH** | **15,850** | **14.1** | **5,511** | **9.6** | **9,081** | **15.7** | **1,074** | **13.5** | **184** | **22.5** |
| AR,E | 4,565 | 59.6 | 1,684 | 61.1 | 2,838 | 59.2 | 4 | - | 39 | 18.4 |
| AR,W | 901 | 12.5 | 138 | 12.4 | 756 | 12.4 | 0 | - | 7 | - |
| IA,N | 388 | 8.6 | 69 | 8.4 | 309 | 8.6 | 2 | - | 8 | - |
| IA,S | 481 | 9.6 | 99 | 6.0 | 214 | 7.4 | 153 | 14.8 | 15 | 25.2 |
| MN | 4,430 | 12.6 | 1,403 | 1.7 | 2,207 | 27.0 | 792 | 13.0 | 28 | 23.0 |
| MO,E | 2,173 | 8.5 | 1,030 | 5.6 | 1,105 | 10.9 | 6 | - | 32 | 22.6 |
| MO,W | 1,951 | 10.5 | 944 | 7.6 | 891 | 12.8 | 98 | 12.7 | 18 | 23.3 |
| NE | 496 | 9.0 | 54 | 2.2 | 411 | 9.4 | 9 | - | 22 | 22.4 |
| ND | 237 | 13.5 | 7 | - | 222 | 13.2 | 4 | - | 4 | - |
| SD | 228 | 14.3 | 83 | 11.7 | 128 | 14.5 | 6 | - | 11 | 30.9 |

## Table C-5. (March 31, 2014—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **9TH** | **33,582** | **7.4** | **8,725** | **4.3** | **21,025** | **7.7** | **3,377** | **13.3** | **455** | **24.1** |
| AK | 249 | 9.2 | 35 | 5.2 | 210 | 10.5 | 0 | - | 4 | - |
| AZ | 2,439 | 7.7 | 128 | 2.3 | 1,679 | 6.4 | 584 | 13.5 | 48 | 29.2 |
| CA,N | 4,979 | 8.1 | 984 | 4.4 | 2,478 | 7.0 | 1,459 | 12.3 | 58 | 28.4 |
| CA,E | 2,577 | 8.8 | 880 | 5.7 | 1,618 | 10.4 | 50 | 19.0 | 29 | 31.5 |
| CA,C | 11,560 | 5.8 | 4,073 | 4.3 | 7,130 | 6.6 | 211 | 14.2 | 146 | 21.4 |
| CA,S | 2,345 | 6.6 | 385 | 3.3 | 1,224 | 5.3 | 711 | 13.2 | 25 | 27.0 |
| HI | 696 | 7.2 | 348 | 4.8 | 292 | 8.3 | 42 | 23.7 | 14 | 14.5 |
| ID | 392 | 11.6 | 32 | 1.9 | 277 | 10.8 | 72 | 16.7 | 11 | 23.6 |
| MT | 435 | 9.2 | 142 | 4.6 | 152 | 7.4 | 129 | 14.1 | 12 | 19.1 |
| NV | 2,143 | 8.9 | 265 | 3.9 | 1,776 | 9.8 | 86 | 8.6 | 16 | 41.5 |
| OR | 1,926 | 11.3 | 502 | 8.6 | 1,375 | 11.6 | 8 | - | 41 | 22.5 |
| WA,E | 865 | 13.0 | 262 | 5.4 | 586 | 14.8 | 6 | - | 11 | 24.1 |
| WA,W | 2,917 | 6.7 | 657 | 2.3 | 2,210 | 7.5 | 10 | 20.2 | 40 | 18.7 |
| GUAM | 29 | 23.2 | 7 | - | 13 | 28.9 | 9 | - | 0 | - |
| NMI | 30 | 14.9 | 25 | 14.0 | 5 | - | 0 | - | 0 | - |
| **10TH** | **8,503** | **8.8** | **2,114** | **4.6** | **5,203** | **9.2** | **1,042** | **13.7** | **144** | **24.7** |
| CO | 2,658 | 6.2 | 905 | 4.4 | 1,630 | 6.6 | 81 | 18.4 | 42 | 27.2 |
| KS | 1,246 | 8.6 | 339 | 4.8 | 787 | 9.0 | 103 | 17.8 | 17 | 24.6 |
| NM | 998 | 10.3 | 259 | 6.5 | 412 | 10.7 | 306 | 12.9 | 21 | 26.9 |
| OK,N | 663 | 9.6 | 66 | 3.1 | 573 | 10.2 | 17 | 18.2 | 7 | - |
| OK,E | 428 | 13.7 | 20 | 2.5 | 394 | 14.0 | 7 | - | 7 | - |
| OK,W | 1,089 | 8.5 | 251 | 4.1 | 469 | 8.0 | 347 | 10.8 | 22 | 18.2 |
| UT | 1,204 | 11.6 | 208 | 5.4 | 880 | 12.4 | 94 | 22.8 | 22 | 36.4 |
| WY | 217 | 9.6 | 66 | 3.6 | 58 | 8.4 | 87 | 13.2 | 6 | - |
| **11TH** | **26,329** | **8.0** | **2,210** | **4.0** | **22,204** | **8.1** | **1,615** | **12.2** | **300** | **20.5** |
| AL,N | 4,906 | 22.7 | 48 | 2.0 | 4,808 | 22.7 | 22 | 30.2 | 28 | 21.7 |
| AL,M | 728 | 9.8 | 71 | 4.4 | 605 | 9.6 | 41 | 17.7 | 11 | 24.9 |
| AL,S | 535 | 8.1 | 117 | 3.8 | 396 | 8.5 | 16 | 16.3 | 6 | - |
| FL,N | 1,357 | 6.7 | 61 | 3.3 | 1,275 | 6.9 | 10 | 22.3 | 11 | 24.5 |
| FL,M | 6,748 | 8.3 | 509 | 6.2 | 6,034 | 8.1 | 112 | 17.4 | 93 | 21.4 |
| FL,S | 6,717 | 4.7 | 626 | 3.2 | 5,943 | 4.8 | 57 | 11.5 | 91 | 16.1 |
| GA,N | 4,055 | 6.7 | 363 | 2.6 | 2,318 | 4.8 | 1,339 | 11.2 | 35 | 28.1 |
| GA,M | 775 | 9.8 | 230 | 5.8 | 523 | 11.0 | 3 | - | 19 | 25.1 |
| GA,S | 508 | 8.9 | 185 | 6.9 | 302 | 10.1 | 15 | 19.7 | 6 | - |

NOTE: Median time intervals are not computed when fewer than 10 cases reported. This table excludes land condemnations, prisoner petitions, deportation reviews, recovery of overpayments, and enforcement of judgments. Includes cases filed in previous years as consolidated cases that thereafter were severed into individual cases. For fiscal years prior to 2001, this table included data on recovery of overpayments and enforcement of judgments.